# United States Court of Appeals

### For the Eighth Circuit

_____

No. 12-1538

_____

Rita Yanovna Brikova,
also known as Rita Yanovna Job

*Appellant*

v.

Eric H. Holder, Jr.,
Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: October 16, 2012
Filed: November 7, 2012

_____

Before RILEY, Chief Judge, COLLOTON and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Rita Job,[1] a native and citizen of Moldova, petitions for review of a final order of removal of the Board of Immigration Appeals ("BIA"), affirming the decision of the immigration judge ("IJ") to deny her applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). She also argues that the BIA violated her equal protection rights in denying her petition to terminate removal proceedings under the Federal First Offender Act ("FFOA"). Job contends that if the criminal conviction giving rise to her removal had occurred in federal court rather than state court, she would have been eligible for FFOA expungement and would not be subject to removal proceedings. For the reasons discussed below, we deny Job's petition.

## I. BACKGROUND

Job entered the United States at age fifteen with her parents and older sister in 1993 after her parents were granted refugee status from Moldova. She was granted lawful permanent resident status in 1994. In 1997, a Minnesota state court conditionally convicted Job of possession of cocaine, a controlled substance. The court sentenced her to a period of up to three years' probation, eighty hours of community service, and a $150 fine. After Job served two years' probation, the court dismissed the case in July 1999 without an adjudication of guilt. In October 2006, the same state court entered a new order, citing unspecified "errors in the record arising from oversight or omission." The 2006 order and 1997 order are identical, except that the 2006 order changed the term of probation and stated that Job "was placed on probation for a period of not more than one year."

On August 27, 2003, following a visit to relatives in Russia, Job sought admission to the United States at O'Hare International Airport in Chicago. Based on her 1997 controlled substance conviction, immigration authorities issued a Record

---

[1]Job's maiden name—and name at the time these removal proceedings commenced—was Rita Yanovna Brikova. This opinion, however, uses her current name.

of Inadmissible Alien and a Notice to Appear, charging that she was removable as an alien convicted of a controlled substance offense under the Immigration and Nationality Act ("INA"). *See* 8 U.S.C. § 1182(a)(2)(A)(i)(II). On April 26, 2005, the IJ held a hearing on Job's applications for asylum, withholding of removal, and protection under the CAT. The IJ denied all three applications the same day. The BIA agreed with the IJ that Job's cocaine conviction constituted an aggravated felony, precluding potential asylum relief. The BIA further concluded that there was no support for Job's claims that she would face persecution or torture if she returned to Moldova. Accordingly, the BIA dismissed Job's appeal on October 31, 2006.

On November 29, 2006, Job filed a motion to reopen her removal proceedings based on her then-recent marriage to a U.S. citizen and a claim of eligibility for an adjustment of immigration status. She also renewed her argument that her conviction for cocaine possession did not constitute an aggravated felony offense barring asylum relief and also argued that the conviction did not make her ineligible for an adjustment of status. The BIA granted reopening and remanded the case to the IJ on March 9, 2007. In August 2007, Job filed a motion to terminate her removal proceeding based on her contention that her cocaine possession conviction did not render her inadmissible, but the IJ denied this motion. Job also filed new applications for asylum, withholding of removal, and CAT protection. The IJ held a hearing on these applications on April 24, 2009.

Among the evidence presented at the 2005 proceeding and on remand in 2009, Job testified that while in Moldova she suffered various forms of persecution based on her Jewish ethnicity. For example, Job told the IJ that her kindergarten teacher called her "all kind[s] of racial slurs" and once threw a chessboard at her, cutting her and leaving a scar above one of her eyes. Job also testified that her family members suffered other forms of discrimination while in Moldova. She stated that her older sister was denied admission to the college of her choice because she was Jewish, that her father was discriminated against in college and in the job market, and that her mother could not obtain government-subsidized housing until she changed her

married Jewish surname, "Vasserman," back to her maiden Russian surname, "Brikova." Job also stated that friends and family in Moldova had advised her to stay out of the country because of how Jewish people were being treated. She also expressed fear that she would be beaten, robbed, kidnapped, or killed if she returned and stated that she would have trouble finding a job in Moldova. In total, the IJ considered more than two dozen country reports on Moldova from various governments and international organizations, including a report by the U.S. State Department, which generally indicated that Jewish residents of Moldova did not face discrimination either by the state or by individuals. Based on this evidence, the IJ again denied Job's applications for asylum, withholding of removal, and CAT protection. The BIA dismissed Job's appeal in February 2012.

In her petition for review, Job initially challenges the BIA's decision denying her petition to terminate removal proceedings pursuant to the FFOA. Under the FFOA, if a person is found guilty of certain federal controlled substance offenses and has not previously been subject to disposition under the FFOA, the court may place that person on probation for a term of not more than one year without entering a judgment of conviction. 18 U.S.C. § 3607(a). In general, convictions expunged under the FFOA do not carry future legal consequences. *See id.* § 3607(b) (explaining that a conviction expunged under the FFOA "shall not be considered a conviction for the purpose of a disqualification or a disability imposed by law upon conviction of a crime, or for any other purpose").[2] Job contends that if she had been

---

[2]We note, however, that subsequent to the enactment of the FFOA, Congress revised the definition of "conviction" for the purposes of the INA. *See* 8 U.S.C. § 1101(a)(48)(A). As a result, it is an unsettled question whether aliens whose convictions have been expunged under the FFOA have convictions for the purposes of immigration law. *See Vasquez-Velezmoro v. INS*, 281 F.3d 693, 697 (8th Cir. 2002). Although we have not squarely addressed the issue, we need not decide it here. Job did not receive relief pursuant to the FFOA, so for the purposes of this opinion, we will assume that convictions expunged by the FFOA are not convictions for immigration purposes. *See id.*

convicted in federal rather than state court, she would have been eligible for FFOA expungement. She argues that this difference in treatment between federal and state court defendants violates her equal protection rights. In her petition, Job also argues that the BIA erred in denying her applications for asylum, withholding of removal, and CAT protection.

## II. DISCUSSION

We first must determine whether this court has jurisdiction to consider this petition. Congress has ordered that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2)." 8 U.S.C. § 1252(a)(2)(C). Among other convictions, 8 U.S.C. § 1182(a)(2) includes convictions for "a violation of . . . any law or regulation of a State, the United States, or a foreign country relating to a controlled substance." 8 U.S.C. § 1182(a)(2)(i)(II). This provision, sometimes referred to as the "criminal alien bar," precludes this court's review of the BIA's decision on Job's applications for asylum, withholding of removal, and CAT protection, save for questions of law or constitutional claims. *See* 8 U.S.C. § 1252(a)(2)(C)-(D); *Costanza v. Holder*, 647 F.3d 749, 753 (8th Cir. 2011). This court has held, however, that despite the criminal alien bar, it "has jurisdiction to determine any preliminary jurisdictional issues," and this jurisdiction includes the ability to "consider whether [a] petitioner is removable because of [a] conviction." *Vasquez-Velezmoro*, 281 F.3d at 695-96. Specifically, this court has held that it has jurisdiction to consider equal protection challenges to the FFOA. *See id.*

Nonetheless, we conclude that Job's conviction subjects her to removal because her equal protection challenge cannot succeed. As an alien, Job is not a member of a suspect class, or otherwise subject to heightened scrutiny. *See id.* at 697 (citing *Plyler v. Doe*, 457 U.S. 202 (1982)). Therefore, her equal protection claim is analyzed under the deferential rational-basis standard. *Id.* Under rational basis

review, "[t]he government's different treatment of persons will 'be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Id.* (quoting *FCC v. Beach Commnc'ns, Inc.*, 508 U.S. 307, 313 (1993)).

The Government argues that there is a rational basis for treating Job differently than FFOA defendants because she received a longer sentence than the law allows for FFOA expungement, and, as such, she is not similarly situated to those defendants. In making this argument, the Government points to the original 1997 order, which sentenced her to up to three years' probation, and to the two-year probation term she actually served. The Government argues that because an alien must be sentenced to no more than one year of probation to be eligible for FFOA expungement, Job is not similarly situated to these defendants. Job argues that the revised 2006 order, which states a revised probationary term of "not more than one year," controls and is entitled to full faith and credit before this court. We question whether we should credit an order correcting *ex post* a probationary term that already has been served, citing only an unspecified clerical error. The Government, however, does not directly challenge the validity of the 2006 order, and we need not reach the issue. Even if this court assumes Job is similarly situated to FFOA defendants, her equal protection claim nonetheless fails because there are multiple potential rational bases for distinguishing between federal and state defendants.

In *Vasquez-Velezmoro*, the only case in which we have considered an equal protection challenge to the FFOA, we held that an alien who was sentenced to ten years' probation by a Texas state court for possession of a controlled substance was not similarly situated to aliens who received FFOA expungement. *See id.* at 695-97. We went on to state that "[t]o the extent these defendants are similarly situated . . . we still see a rational basis for treating differently state and federal convictions that are expunged." *Id.* at 698. For example, the distinction might have been based on Congress' greater familiarity with federal prosecution, which allows it to better "control the pool of aliens who will be eligible for immigration relief via the FFOA,

than it can with state defendant aliens rehabilitated through a variety of [state] statutes." *Id.*; *accord Nunez-Reyes v. Holder*, 646 F.3d 684, 689 (9th Cir. 2011) (en banc) ("Familiar with the operation of the federal criminal justice system, Congress could have thought that aliens whose federal charges are dismissed under the FFOA are unlikely to present a substantial threat of committing subsequent serious crimes. By contrast, Congress may have been unfamiliar with the operation of state schemes that resemble the FFOA." (quoting *Acosta v. Ashcroft*, 341 F.3d 218, 227 (3d Cir. 2003))); *Wellington v. Holder*, 623 F.3d 115, 121 (2d Cir. 2010); *Resendiz-Alcaraz v. U.S. Attorney Gen.*, 383 F.3d 1262, 1272 (11th Cir. 2004); *Madriz-Alvarado v. Ashcroft*, 383 F.3d 321, 332 (5th Cir. 2004); *cf. Elkins v. Comfort*, 392 F.3d 1159, 1163 (10th Cir. 2004) (reaching the same conclusion with respect to a foreign conviction).

Alternatively, as this court has noted, Congress could have been "adopting legislative reform of its treatment of convicted aliens 'one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.'" *Vasquez-Velezmoro*, 281 F.3d at 698 (quoting *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955)). Congress also might have been concerned that "state criminal justice systems, under the pressure created by heavy case loads, might permit dangerous offenders to plead down to simple possession charges and take advantage of those state schemes to escape what is considered a conviction under state law." *Acosta*, 341 F.3d at 227; *accord Nunez-Reyes*, 646 F.3d at 689-90; *Wellington*, 623 F.3d at 121-22; *Resendiz-Alcaraz*, 383 F.3d at 1272. Other circuits also have suggested that in the interest of uniformity, Congress could have decided that it would not recognize any state expungements rather than adopt a piecemeal approach where persons convicted in states that permit expungement would be eligible for immigration relief, while those who lived in states without expungement schemes would not. *Nunez-Reyes*, 646 F.3d at 690; *see also Ramos v. Gonzales*, 414 F.3d 800, 806 (7th Cir. 2005) ("State laws vary considerably, and the BIA (as well as Congress) reasonably might have thought that the law should entitle only persons who actually

have been charged and sentenced under the FFOA to leniency for immigration purposes.").

All of these reasons rationally explain the differing treatment given to aliens with state-expunged convictions and aliens with FFOA-expunged convictions. Accordingly, we reject Job's equal protection challenge to her removal proceedings.

Finally, because Job's challenge to the denial of her applications for asylum, withholding of removal, and CAT protection all rest on factual determinations of the IJ and BIA rather than on questions of law or constitutional claims, as noted above, this court lacks jurisdiction to review those decisions. *See* 8 U.S.C. § 1252(a)(2)(C)-(D); *Costanza*, 647 F.3d at 753. Thus, we dismiss those portions of Job's petition for lack of jurisdiction.

## III. CONCLUSION

We conclude that Job's equal protection challenge to the FFOA fails and that we lack jurisdiction to review the BIA's denial of her applications for asylum, withholding of removal, and CAT protection. Therefore, we dismiss in part and deny in part Job's petition for judicial review.

_____