# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2826

_____

Mirna Villegas Rendon, also known as Mirna Rendon Villegas

*Petitioner*

v.

William P. Barr, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted:  October 18, 2019
Filed: March 12, 2020

_____

Before SMITH, Chief Judge, GRUENDER and BENTON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Mirna Villegas Rendon petitions for review of a final order of removal issued by the Board of Immigration Appeals' ("BIA"), following her appeal from an immigration judge's ("IJ") removal order denying her applications for asylum and withholding of removal.  We deny the petition for review.

## I.

Rendon, a native and citizen of Mexico, first entered the United States without inspection as a teenager in the late 1980s. She claims that she most recently reentered the United States in 2004 when returning from a roughly seven-month trip to Mexico by pretending to be asleep as the passenger in a vehicle crossing the border.

On April 24, 2017, Rendon was convicted in Minnesota for fifth degree possession of a controlled substance, specifically methamphetamine and tramadol, in violation of Minnesota Statute section 152.025, subdivision 2(1). Thereafter, the Department of Homeland Security ("DHS") issued Rendon a notice to appear before an IJ, charging her with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i) because she was an alien present in the United States without admission or parole and under 8 U.S.C. § 1182(a)(2)(A)(i)(II) because she was an alien convicted of a controlled substance offense. The notice to appear did not specify the time or date of the proceedings.

Rendon then filed a motion to terminate the removal proceedings. In this motion, she argued that her crime was not a controlled substance offense for immigration purposes and that she had entered the United States legally in 2004. After a contested removability hearing in August 2017, the IJ issued an oral decision finding that Rendon failed to meet her burden of proof regarding the manner of her entry into the United States and therefore sustained the charge of inadmissibility under § 1182(a)(6)(A)(i). But in September 2017, the IJ issued a written decision declining to sustain the controlled substance removal charge under § 1182(a)(2)(A)(i)(II).

At another hearing in November 2017, the IJ declined a request by Rendon to terminate removal proceedings by granting her military "parole in place." Rendon claimed she qualified based on her 2007 marriage to a man who had served in the United States Navy and been discharged in 1992. Rendon also testified about past

sexual abuse she suffered as a child in Mexico, and her current husband testified that their family was reliant on Rendon.

Then, in February 2018, the IJ issued a decision sustaining the removal charges and denying the applications for relief and protection. The IJ reconsidered her September 2017 decision regarding the controlled substance charge, reversed position, and instead sustained that charge. The IJ also found that Rendon's application for asylum was time barred because it was not filed within one year of her arrival and that this untimeliness was not excused by extraordinary or changed circumstances. Finally, the IJ found that Rendon was ineligible for withholding of removal on the basis of past or future persecution.

Rendon appealed the IJ's ruling to the BIA. While the appeal was pending, Rendon also filed a motion to remand, arguing that her notice to appear was defective under the Supreme Court's decision in *Pereira v. Sessions*, 585 U.S. ---, 138 S. Ct. 2105 (2018). The BIA dismissed the appeal and denied the motion to remand.

Rendon petitions this court for review of the BIA's dismissal. The BIA's decision was the final agency decision, *see* 8 U.S.C. § 1101(a)(47)(B)(i), and we have jurisdiction to consider the appeal under 8 U.S.C. § 1252(a)(5).[1]

---

[1]Rendon argues that the Supreme Court's decision in *Pereira* establishes that the IJ never had jurisdiction over her case because her notice to appear did not include the time and place of her removal proceedings. We rejected this interpretation of *Pereira* in *Ali v. Barr*, 924 F.3d 983, 986 (8th Cir. 2019) ("*Pereira* had nothing to say about when an [IJ] obtains jurisdiction over an alien's removal proceedings.").

## II.

### A.

Rendon first asserts that her state drug conviction under Minnesota Statute section 152.025 does not constitute grounds for removal because the Minnesota statute is overbroad and indivisible.

"We review the BIA's decision for substantial evidence on the record as a whole and will uphold its factual findings unless [Rendon] demonstrates that the evidence [s]he presented not only supports a contrary conclusion but compels it." *Fuentes-Erazo v. Sessions*, 848 F.3d 847, 852 (8th Cir. 2017) (internal quotation marks omitted and emphasis omitted); *see also* 8 U.S.C. § 1252(b)(4)(B). "We review the BIA's legal determinations de novo." *Constanza v. Holder*, 647 F.3d 749, 753 (8th Cir. 2011). "To the extent the BIA adopted the findings or reasoning of the IJ, we consider the two decisions together." *Fuentes-Erazo*, 848 F.3d at 852.

We have recognized that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2)," including a controlled substance offense. *Brikova v. Holder*, 699 F.3d 1005, 1008 (8th Cir. 2012) (quoting 8 U.S.C. § 1252(a)(2)(C)). This criminal alien review bar precludes our review of the agency's decision, "save for questions of law or constitutional claims." *Id.* at 1008 (citing 8 U.S.C. § 1252(a)(2)(C)-(D)). We have jurisdiction to consider whether Rendon is inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(II) due to her drug conviction because that involves an issue of statutory interpretation and is therefore a question of law. *See Waldron v. Holder*, 688 F.3d 354, 359 (8th Cir. 2012).

To determine whether a state drug conviction is grounds for removal, we are required to apply the "categorical approach" and compare the elements of the state offense with the elements of removable offenses defined by federal law. *Martinez v. Sessions*, 893 F.3d 1067, 1069 (8th Cir. 2018). Under this approach, we assume

that the state conviction rested on only the least of the acts criminalized by the state statute, and then we "determine whether that state statute fits within the removable offense identified by federal law." *Id.* at 1070. A state statute is considered overbroad when it criminalizes more conduct than the removable offense, and a conviction under such a statute does not categorically make the offender removable. *Id.* at 1070.

If a state statute is overbroad, we must determine whether the statute is divisible, meaning we ask whether it includes multiple, alternative elements that create several different crimes. *Id.* If so, we may then apply the modified categorical approach and "seek to determine, based on a limited class of judicial records, the crime of which the alien was convicted. . . . [I]f the elements of the offense of conviction fit within the removable offense, the alien is removable." *Id.*

The Immigration and Nationality Act provides that an alien is removable for violating a state law relating to a controlled substance as defined in 21 U.S.C. § 802. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(II). The Government concedes that Minnesota Statute section 152.025 is overbroad because it prohibits the possession of more substances than the controlled substances listed in the schedules referenced by § 802; so we will examine whether the statute is divisible.

A statute is divisible if the specific controlled substance underlying the conviction must be an element of the possession offense, not merely an alternative means of committing the offense. *See Mathis v. United States*, 579 U.S. ---, 136 S. Ct. 2243, 2256 (2016). The Minnesota statute here provides that "[a] person is guilty of controlled substance crime in the fifth degree . . . if . . . the person unlawfully possesses one or more mixtures containing a controlled substance." Minn. Stat. § 152.025, subd. 2(1). These controlled substances are classified under state Schedules I through IV in Minnesota Statute section 152.02.

We agree with the BIA that the identity of the controlled substance is an element of the possession offense in the Minnesota statute, and therefore the statute

is divisible. Our examination of a similar Missouri controlled substance statute in *Martinez v. Sessions* is instructive in analyzing Minnesota's statute. 893 F.3d 1070-73. In *Martinez*, a Missouri statute made it a crime to "possess with intent to . . . deliver . . . a controlled substance." *Id.* at 1070. "A separate section . . . defined 'controlled substance' with reference to five drug schedules . . . ." *Id.* The petitioner in *Martinez* argued that the statute was indivisible because "the different controlled substances represent[ed] different ways or means of committing a single offense." *Id.* We concluded, however, that the statute was divisible because the "identity of the controlled substance is an element of the offense." *Id.* at 1072-73. We based our conclusion on a review of Missouri state law, particularly on the fact that Missouri courts allowed for separate convictions under the Missouri controlled substance statute for two different types of controlled substances. *See id.* at 1071.

Similar to our analysis in *Martinez*, Minnesota's case law and statutory text also demonstrate that the identity of the controlled substance is an element of the possession offense. For example, the Minnesota Court of Appeals has held that an individual can be convicted of seven different counts of fifth degree drug possession where the individual possessed seven different controlled substances at the same time. *State v. Papadakis*, 643 N.W.2d 349, 352 (Minn. Ct. App. 2002) (imposing seven fifth degree controlled substance convictions for possession of hashish and six different kinds of steroids). We have considered separate convictions for different types of controlled substances persuasive evidence that the identity of a substance is an element of the crime. *Martinez*, 893 F.3d at 1071.

The statutory text also supports the BIA's finding that the statute is divisible. *See id.* Rendon argues that the statute cannot be divisible because the controlled substances are listed in a separate statutory section. We have recognized that where "a phrase is defined in a separate statutory section, that provides textual support that the definition is a list of means by which [an] element may be committed." *United States v. McFee*, 842 F.3d 572, 575 (8th Cir. 2016) (internal quotation marks omitted). But "[t]here is no universal rule that listings in a separate section

-6-

automatically are means rather than elements." *Martinez*, 893 F.3d at 1072. For example, in *Martinez*, we explained that when a defined phrase is prefaced with the word "any" rather than "a," the phrasing suggests that the statute created only one offense with several means set forth in the definition because the word "any" includes "all." *Id.* In contrast, subdivision 2(1) of section 152.025 prefaces "controlled substance" with "a," indicating the phrase is limited to one substance per offense. Minn. Stat. § 152.025, subd. 2(1). The text of the statute and the case law here establish that the agency did not err in finding that the identity of the substance is an element rather than a means. Therefore, the statute is divisible.[2]

Because the statute is divisible, we apply the modified categorical approach and "determine, based on a limited class of judicial records, the crime of which the alien was convicted" and whether the "offense of conviction fit[s] within the removable offense." *Martinez*, 893 F.3d at 1070. Rendon's guilty plea petition states that she pleaded guilty to the charge in the state court complaint—fifth degree possession of a controlled substance, specifically methamphetamine. Methamphetamine is a federally controlled substance. *See* 21 U.S.C. § 812(c), Schedules II(c), III(a)(3). Thus, Rendon's state drug conviction under Minnesota Statute section 152.025 constitutes grounds for removal.

Rendon also argues that, because she is not removable for a controlled substance offense, we should remand her case to allow her to apply for cancellation of removal. Because the BIA properly applied the modified categorical approach to find that Rendon is removable, she is not eligible for cancellation of removal. *See United States v. Ramirez-Jimenez*, 907 F.3d 1091, 1094 (8th Cir. 2018) (noting that "an alien convicted of [a drug offense] is not eligible for cancellation of removal").

---

[2]Because the statutory text and Minnesota case law are sufficient to support a finding that the statute is divisible, we need not reach Rendon's objection to the BIA's finding that Minnesota's pattern jury instructions also support the statute's divisibility.

B.

Rendon next argues that because the BIA erred in finding she did not legally enter the United States in 2004, she is not subject to removal under § 1182(a)(6)(A)(i). Rendon asserts that she demonstrated through credible testimony that she entered the United States by pretending to be asleep in a car, which may qualify as a legal admission under *Matter of Quilantan*, 25 I. & N. Dec. 285 (BIA 2010). The BIA, however, did not reach the issue of whether Rendon's claimed manner of entry was legal but simply agreed with the IJ that Rendon's testimony was not sufficiently persuasive to establish that she did in fact enter the United States in the manner she claimed, pointing to inconsistencies and vagueness in her account. Therefore, Rendon's argument is simply a "challenge to the [BIA's and] IJ's discretionary and fact-finding exercises cloaked as a question of law." *See Mocevic v. Mukasey*, 529 F.3d 814, 817 (8th Cir. 2008) (concluding that an argument that the BIA committed legal error by determining that petitioner did not meet his burden of proof was actually a question of fact as to how the BIA and IJ weighed the evidence). We therefore lack jurisdiction to review this claim under the criminal alien bar. *See id.* at 816-17.

C.

The BIA also did not err in dismissing Rendon's appeal of the IJ's denial of her asylum and withholding of removal claims.[3] Again, the criminal alien bar precludes our review of the BIA's decision on Rendon's applications for asylum and withholding of removal "save for questions of law or constitutional claims." *Brikova*, 699 F.3d at 1008.

---

[3]Rendon's Convention Against Torture claim was mentioned in Rendon's "Statement of the Issues Presented for Review" section but was not supported with any argument, reasoning, or citation to authority in her opening brief. Thus, we deem this claim to be waived. *See, e.g.*, *Lemus-Arita v. Sessions*, 854 F.3d 476, 479 n.2 (8th Cir. 2017).

First, Rendon argues that the BIA erred in holding that she did not qualify for the "extraordinary circumstances" exception to the one-year deadline for filing an asylum application. The BIA agreed with the IJ's finding that, although Rendon had experienced trauma as a child, she did not establish that this trauma prevented her from filing for asylum in a timely fashion. Rendon argues that whether a petitioner has presented facts sufficient to qualify for this exception is a predicate legal determination that we may review despite the criminal alien bar. Rendon effectively admits, however, that this is a factual determination regarding the severity of Rendon's mental illness and disability, which we lack jurisdiction to review. *See Bin Jing Chen v. Holder*, 776 F.3d 597, 601 (8th Cir. 2015) (holding that we lack jurisdiction under the criminal alien bar to review whether a petitioner "demonstrated changed circumstances that would provide an exception" to the one-year asylum filing deadline).

Second, Rendon argues that she is eligible for withholding of removal because she is a member of four particular social groups that the Mexican government is unwilling or unable to protect. "Eligibility for withholding of removal requires proof . . . that the alien's life or freedom would be threatened" due to "persecution on account of . . . membership in a particular social group." *Hounmenou v. Holder*, 691 F.3d 967, 970 (8th Cir. 2012). We have concluded that "persecution" requires harm inflicted either by "a country's government or by people . . . the government is unable or unwilling to control." *Edionseri v. Sessions*, 860 F.3d 1101, 1104 (8th Cir. 2017). Regardless of whether Rendon demonstrated her membership in a particular social group, the BIA and IJ held that Rendon did not demonstrate that the Mexican government was unwilling or unable to protect her. This is a question of fact, requiring review of the BIA's weighing of the evidence regarding the Mexican government's ability and desire to protect certain groups. *See Gutierrez-Vidal v. Holder*, 709 F.3d 728, 732 (8th Cir. 2013) ("Whether a government is unable or unwilling to control private actors is a question of fact . . . ." (internal quotation marks omitted)). Thus, we lack jurisdiction to review this claim under the criminal alien bar.

D.

Rendon also argues that the IJ abused its discretion by rejecting her motion to terminate in order to pursue military parole in place and that the BIA erred by failing to consider the matter on appeal. Pursuant to a United States Citizenship and Immigration Services ("USCIS") policy, a former member of the United States Armed Forces, such as Rendon's husband, may request parole in place adjudication on behalf of a spouse. *Discretionary Options for Military Service Members, Enlistees, and Their Families*, U.S. Citizenship and Immigration Services (last updated Sept. 30, 2019), https://www.uscis.gov/military/discretionary-options-military-members-enlistees-and-their-families. "Though we ordinarily review only the BIA's decision, we also review the IJ's decision as part of the final agency action if the BIA adopted the findings or the reasoning of the IJ." *Etenyi v. Lynch*, 799 F.3d 1003, 1006 (8th Cir. 2015) (internal quotation marks omitted). The BIA's reasoning mirrors the IJ's on this issue, so we will review the reasoning of both decisions. We review the BIA's affirmance and the IJ's refusal to terminate removal proceedings for an abuse of discretion. *Hanggi v. Holder*, 563 F.3d 378, 381-84 (8th Cir. 2009); *Shaikhs v. INS*, 181 F.3d 823, 826 (7th Cir. 1999).

First, we are persuaded by the IJ's reasoning for rejecting Rendon's motion to terminate based on military parole in place. The IJ reasoned that Rendon was properly in removal proceedings and "it would be essentially up to DHS" whether "they would wish to exercise prosecutorial discretion to let the proceedings be terminated in order for respondent to pursue the parole in place." As we noted in *Hanggi*, an IJ may terminate removal proceedings only under two regulatory provisions—8 C.F.R. § 1238.1(e), which applies if an alien has been convicted of certain criminal offenses, and 8 C.F.R. § 1239.2(f), which applies to aliens who have filed an application or petition for naturalization. 563 F.3d at 384*; see also Matter of S-O-G- & F-D-B- Respondents*, 27 I&N Dec. 462, 466 (A.G. 2018). Rendon does not seek termination under 8 C.F.R. § 1238.1(e), and she does not argue or present evidence that she has filed a Form N-400, as is required for an application or petition for naturalization. *See Hanggi*, 563 F.3d at 384 (noting that "a naturalization petition

(Form N-400) cannot be filed until the applicant has been lawfully admitted for permanent residence"). Because neither of these provisions applies, the IJ did not abuse its discretion in declining to terminate removal proceedings.

Second, contrary to Rendon's assertion, the BIA did in fact consider her motion to terminate removal proceedings and acknowledged that Rendon requested termination in order to pursue parole in place with the USCIS. The BIA addressed the motion by stating that it lacked "jurisdiction over a decision to grant parole" and therefore "decline[d] to terminate the proceedings." In other words, the BIA upheld the IJ's decision because the basis for the termination request—that is, allowing the DHS to determine whether Rendon is entitled to parole in place—is not a recognized ground for which an IJ may terminate removal proceedings. *See Hanggi*, 563 F.3d at 383-84. Because the BIA correctly agreed with the IJ that whether to terminate proceedings was based on a decision about the applicability of military parole in place that was left to the DHS's discretion, the BIA did not abuse its discretion in declining to terminate the proceedings.

### III.

For the foregoing reasons, the petition for review is denied.

_____