# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 19-3480

———————————————

Abdirizak Mohamed Ahmed

*Petitioner*

v.

Merrick B. Garland, Attorney General of the United States

*Respondent*

—————————

Petition for Review of an Order of the
Board of Immigration Appeals

—————————

Submitted: October 22, 2020
Filed: April 8, 2021

—————————

Before COLLOTON, GRASZ, and STRAS, Circuit Judges.

—————————

STRAS, Circuit Judge.

Abdirizak Ahmed challenges his removability and seeks asylum. The Board of Immigration Appeals ruled against him on both fronts. We deny Ahmed's petition for review.

I.

Ahmed, a Somali native, came to the United States in 2000. Part of a minority Islamic sect called Sufism, he fled Somalia to escape the country's civil war. His entire family now resides in the United States, including his nine children.

While here, Ahmed has committed a number of crimes, including three for possession of khat, a controlled substance that contains a known stimulant. *See* Minn. Stat. § 152.025, subd. 2(1) (criminalizing the possession of various controlled substances, including cathinone and cathine). Criminal convictions often have immigration consequences, and this case is no exception. After his third conviction, Immigration and Customs Enforcement officers arrested Ahmed at his home. Then, just days later, the Department of Homeland Security charged him as removable by filing a notice to appear—basically, the immigration equivalent of a complaint. *See* 8 U.S.C. § 1227(a)(2)(B)(i) (allowing for the deportation of an alien who has been convicted of a controlled-substance offense).

At first, the proceedings focused on whether Ahmed was removable. The immigration judge concluded that he was not because Minnesota's fifth-degree-possession statute was "categorically overbroad and indivisible." The Board reached the opposite conclusion, however, and vacated the decision.

When the case returned to an immigration judge, Ahmed initially sought cancellation of removal and then asylum. The latter request succeeded at first when the judge concluded that Ahmed had a well-founded fear of future persecution based on his Sufi religion, imputed political opinion, and membership in a particular social group "of individuals with mental health illnesses, specifically [post-traumatic stress disorder]."

Yet again, the Board disagreed. It concluded, based on the record, that individuals with post-traumatic stress disorder did not make up "a distinct social

group"; that Ahmed could safely relocate within Somalia; and "that the Somali government ha[d] undertaken significant efforts to combat al-Shabaab," which was the group most likely to religiously and politically persecute him. In his petition for review, Ahmed asks us to overturn the Board's decisions declaring him removable and denying asylum.

## II.

Our "scope of review" here is "narrow[]." *Kassim v. Barr*, 954 F.3d 1138, 1140 (8th Cir. 2020). Except for constitutional claims and questions of law, "no court [has] jurisdiction to review [the] final order of removal" if an alien is removable for having committed one or more criminal offenses. 8 U.S.C. § 1252(a)(2)(C), (D). This limitation is commonly known as the criminal-alien bar. *See Rendon v. Barr*, 952 F.3d 963, 967–68, 970 (8th Cir. 2020).

For the most part, Ahmed's arguments fall into the exception for questions of law. One involves whether Ahmed is removable for "violat[ing]" a state law "relating to a [federal] controlled substance," 8 U.S.C. § 1227(a)(2)(B)(i), which presents a question of statutory interpretation that we review de novo, *see Rendon*, 952 F.3d at 967–68. The other is whether the Board applied the correct standard of review in overturning the immigration judge's asylum decision. *See Omar v. Barr*, 962 F.3d 1061, 1064 (8th Cir. 2020) (explaining that "[w]hether the Board followed its regulations, refrained from independent factfinding, and applied the correct standard of review" are all questions of law).

## A.

We start with the statutory question, which is whether Ahmed's conviction for possession of khat "relat[es] to a [federal] controlled substance." 8 U.S.C. § 1227(a)(2)(B)(i). Federal law provides five "schedules" of highly regulated controlled substances, which are generally illegal to possess and use. 21 U.S.C.

§ 812; *see id.* §§ 802(6); 841(a).  The idea is that if an alien is convicted of a crime involving a substance listed on one of those schedules, then he or she is removable from the country.  *See Mellouli v. Lynch*, 135 S. Ct. 1980, 1987, 1990–91 (2015).  Ahmed faces this situation.

At least with respect to the Minnesota statute involved here, *see* Minn. Stat. § 152.025, subd. 2(1), we are not writing on a blank slate.  We decided last year that it is divisible, meaning that the identity of "the specific controlled substance" is an element of the offense.  *Rendon*, 952 F.3d at 968.  Under those circumstances, a modified categorical approach applies, which allows us to look at "a limited class of judicial records" to determine the specific controlled substance possessed.  *Id*. at 968–69 (quotation marks omitted).  If the judicial records identify a specific controlled substance, then the alien is removable if the substance also appears on one of the federal schedules.  *Id.*  In *Rendon*, we concluded that the offense qualified because it involved methamphetamine, which is either a schedule II or III substance.  *Id*. at 969.

The controlled substance here is different, but the analysis is the same.  Ahmed's guilty-plea petition reveals that he was convicted of possessing khat, which contains at least one of two substances listed on the federal schedules.  *See* 21 C.F.R. §§ 1308.11(f)(3) (Schedule I), 1308.14(f)(1) (Schedule IV); Schedules of Controlled Substances: Placement of Cathinone and 2,5-Dimethoxy-4-ethylamphetamine into Schedule I, 58 Fed. Reg. 4316, 4317 (Jan. 14, 1993) (discussing the chemical composition of khat); *see also United States v. Sheikh*, 367 F.3d 756, 763–64 (8th Cir. 2004) (rejecting a due-process challenge to the Controlled Substances Act for not "expressly list[ing] khat as a controlled substance").  What this means for Ahmed is that he, just like Rendon, is removable.  *See Rendon*, 952 F.3d at 969.

B.

Ahmed's other challenge is to the Board's decision to deny asylum. The focus now is on whether the Board departed from its own standard of review by making findings of fact. *See Garcia-Mata v. Sessions*, 893 F.3d 1107, 1109 (8th Cir. 2018) (explaining that we review de novo whether the Board stuck to its own standard of review). As we have explained before, the Board "may not find new facts of its own, even if it is trying to fill gaps in the immigration judge's reasoning." *Kassim*, 954 F.3d at 1140 (citation omitted). It may overturn the immigration judge's findings, but only if they are clearly erroneous. *See* 8 C.F.R. § 1003.1(d)(3)(i). If it does, then our task is to determine "whether the Board provided sufficient justification for its determination." *Omar*, 962 F.3d at 1064.

1.

To receive asylum, Ahmed had to prove that he was "unable or unwilling to return to" Somalia because of "persecution or a well-founded fear of persecution on account of" a protected ground. 8 U.S.C. § 1101(a)(42)(A); *see id.* § 1158(b)(1)(A). Ahmed argued that one of those protected grounds was his membership in a "particular social group" consisting of those suffering from "mental health illnesses, specifically [post-traumatic stress disorder]." The immigration judge agreed with him, but the Board concluded that this social group was not "socially distinct," meaning that Somali "society" does not make "meaningful distinctions based on the common immutable characteristics defining the group." *Gonzalez Cano v. Lynch*, 809 F.3d 1056, 1058–59 (8th Cir. 2016) (internal quotation marks omitted). In Ahmed's view, the Board was only able to reach this conclusion by ignoring the immigration judge's factual findings and supplying some of its own. If he is right, the Board exceeded its standard of review.[1]

---

[1]Framed this way, we can consider Ahmed's argument. *See Omar*, 962 F.3d at 1064. We have no jurisdiction, however, to review whether substantial evidence

The cognizability of a proposed social group presents a question of law that the Board reviews de novo. *See Miranda v. Sessions*, 892 F.3d 940, 943 (8th Cir. 2018). In conducting its de-novo review, "the Board . . . must examine whether the facts found by the immigration judge satisfy th[e] elements [of a particular social group] as a matter of law." *Matter of A-C-A-A-*, 28 I. & N. Dec. 84, 89 (A.G. 2020). That is exactly what the Board did in this case.

Even accepting the immigration judge's finding "that people with disabilities in Somalia are particularly marginalized and vulnerable," the Board concluded that a group consisting of individuals with post-traumatic stress disorder would not be "perceived, considered, or recognized by Somali society to be a distinct social group." In fact, pointing to evidence in the record, it noted that there are no words in the Somali language for post-traumatic stress disorder and that, more broadly, it is "considered a state of sorrow and not a mental health problem." (Quotation marks omitted). The bottom line, according to the Board, was that Ahmed's evidence was simply "insufficient" to establish the social distinctiveness of his proposed social group.

The Board's statement, though perhaps not as precise as it could have been, was the equivalent of saying that "the facts found by the immigration judge" did not "satisfy" the social-distinction element "as a matter of law." *Matter of A-C-A-A-*, 28 I. & N. Dec. at 89; *see Ngugi v. Lynch*, 826 F.3d 1132, 1138 (8th Cir. 2016). The Board's role, after all, is to figure out whether the alien has "carried [his] burden" of proving entitlement to asylum. *Matter of A-C-A-A-*, 28 I. & N. Dec. at 85; *see Mocevic v. Mukasey*, 529 F.3d 814, 817 (8th Cir. 2008) (per curiam). And here, the Board said that Ahmed had not.

_____

supports the immigration judge's finding that individuals with mental-health illnesses face a reasonable possibility of persecution in Somalia. *See Rendon*, 952 F.3d at 970; *see also Chak Yiu Lui v. Holder*, 600 F.3d 980, 983 (8th Cir. 2010) (explaining that, when the Board issues an independent decision without adopting the immigration judge's conclusions, we review only the Board's decision).

2.

Imputed political opinion and religion were two other grounds for asylum. This time, Ahmed alleged that the persecution would occur at the hands of al-Shabaab, an Islamic fundamentalist group. Yet again, the immigration judge agreed with him and the Board did not. In the Board's view, he had failed to prove, among other things, that the Somali government was "unable or unwilling to protect him from" al-Shabaab. *See Saldana v. Lynch*, 820 F.3d 970, 975–76 (8th Cir. 2016); *Menjivar v. Gonzales*, 416 F.3d 918, 921 (8th Cir. 2005).

Al-Shabaab is a private actor, so asylum under these circumstances is available only when the government condones the group's conduct or is otherwise completely helpless to stop it. *See Saldana*, 820 F.3d at 976–77. To overturn the immigration judge's factual finding that the Somali government was helpless, the Board had to conclude that it was clearly erroneous. *See Menjivar*, 416 F.3d at 921.

The Board, in effect, did just that. It pointed out, for example, that the immigration judge had ignored evidence that Somali officials had experienced some success in curbing al-Shabaab, leaving the group with control over "less than 20 percent of the country." It also twice noted that Ahmed's evidence was insufficient to show that the Somali government was helpless in its efforts. So even though Ahmed is right that words like "clear error" are absent from this part of the Board's opinion, the thrust of the Board's analysis was that the evidence relied on by the immigration judge was "undeserving of the weight" placed on it. *Omar*, 962 F.3d at 1064. To the extent the immigration judge found to the contrary, in other words, the finding was clearly erroneous.[2]

---

[2]The Board also rejected the immigration judge's finding that it would be unreasonable for Ahmed to relocate within Somalia. We need not address this point given our conclusion that the Board did nothing wrong in deciding that Ahmed had failed to prove that the Somali government was unable or unwilling to protect him.

## III.

We accordingly deny the petition for review in part, dismiss the remainder for lack of jurisdiction, and deny the motion for a stay of removal.

_____

---

*See Melecio-Saquil v. Ashcroft*, 337 F.3d 983, 987–88 (8th Cir. 2003). In light of Ahmed's ineligibility for asylum, withholding of removal is necessarily unavailable too. *See Matul-Hernandez v. Holder*, 685 F.3d 707, 713 (8th Cir. 2012) (explaining that the failure to establish the grounds for asylum means that an applicant cannot clear "the more rigorous" hurdle for withholding of removal).