# United States Court of Appeals
## For the Eighth Circuit

_____

Nos. 19-3032 & 20-1259

_____

Diego Ulises Aquino Arroyo

*Petitioner*

v.

Merrick B. Garland, Attorney General of the United States[1]

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: December 16, 2020
Filed: April 14, 2021

_____

Before SMITH, Chief Judge, LOKEN and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Diego Ulises Aquino Arroyo appeals the Board's determination that a 2011 Iowa conviction for possession of a controlled substance disqualifies him from relief

---

[1]Attorney General Garland is substituted for his predecessor pursuant to Federal Rule of Appellate Procedure 43(c).

in the form of cancellation of removal.  Under our prior-conviction analysis, he argues the Iowa statute is overbroad but non-divisible such that it categorically does not qualify as a controlled-substance offense.  He also appeals the Board's denials of a motion to reopen proceedings before the IJ for the purpose of administrative closure and a motion for reconsideration.  We find no errors nor abuses of discretion, and we affirm the Board's denial of Arroyo's petition and motions.

I.

Arroyo, a native and citizen of Mexico, entered the United States without admission or parole in 2000 when he was eight years old.  In early 2011, before he turned nineteen, he pleaded guilty to a violation of Iowa Code Section 124.401(5) which criminalizes the simple possession of controlled substances.  The Iowa court entered a deferred judgment and a sentence of one year's probation.

In 2017, Arroyo received deferral of removal for two years pursuant to the program known as Deferred Action for Childhood Arrivals (DACA).[2]  In 2018, while under DACA, he was charged in Iowa with domestic assault by impeding breathing or circulation in violation of Iowa Code Sections 708.1(2) and 708.2A(2)(d).  In August 2018, based on these charges, he pleaded guilty to the offense of disorderly conduct in violation of Iowa Code Section 723.4(2).

The 2018 criminal proceedings brought him to the attention of the Department of Homeland Security (Government).  The Government initiated removal proceedings alleging removability based on two grounds: Arroyo's entry into the United States without admission or parole, 8 U.S.C. § 1182(a)(6)(A)(i); and his 2011 conviction for a controlled-substance offense, 8 U.S.C. § 1182(a)(2)(a)(i)(II).  Arroyo denied both

---

[2]The parties do not identify any immigration-related proceedings initiated prior to 2018 or otherwise explain the circumstances leading to the 2017 DACA relief.

charges of removability. As to the allegation of removability based on the Iowa controlled-substance conviction, he argued the Iowa statute was overbroad but non-divisible. He also applied for withholding of removal and relief pursuant to the Convention Against Torture (CAT). Finally, he applied for cancellation of removal. By this time, Arroyo was married, his wife had received temporary protected status, and he was the father of a United-States-citizen child. In his application for cancellation of removal, he alleged removal would cause harm to his wife and child. To overcome a bar to cancellation of removal based on the Iowa controlled-substance conviction, he asserted the same overbreadth argument that he asserted against the charge of removability.

An immigration judge (IJ) sustained both charges of removability and denied all forms of relief. Regarding cancellation of removal, the IJ found Arroyo's 2011 Iowa statute of conviction overbroad but divisible. Applying the modified categorical approach, the IJ determined that qualifying judicial records showed Arroyo had been convicted for possessing marijuana, specifically, rather than some different controlled substance illegal in Iowa but not included in the applicable federal definitions.

On appeal to the Board, Arroyo challenged the IJ's denial of cancellation of removal. He did not challenge the denials of withholding of removal or CAT relief. While his appeal was pending, he filed a motion asking the Board to reopen his proceedings before the IJ for the purpose of administratively closing his removal proceedings as a whole. According to Arroyo, he had applied to renew DACA relief and would likely receive such relief if his then-current removal proceedings were closed. The Government opposed his motion arguing DACA relief was unlikely in light of Arroyo's two criminal convictions and also arguing the removal proceedings had progressed to a point where administrative closure would be inefficient.

In August 2019, the Board affirmed the IJ and denied Arroyo's motion to reopen. The Board agreed with the IJ that the 2011 Iowa controlled-substance

conviction precluded cancellation of removal. The Board, like the IJ, found the Iowa statute divisible and applied the modified categorical approach, relying on the fact that Arroyo had pleaded guilty to possessing marijuana rather than some other substance. The Board deemed the claims for withholding of removal and CAT relief abandoned. In denying the motion to reopen, the Board noted that Arroyo's "potential eligibility" for DACA relief was not an "exceptional situation." The Board also noted that DACA was "a matter of prosecutorial discretion" that was "simply the result of an administrative policy to give low priority to the enforcement of immigration laws in certain cases." Finally, the Board held that an administrative ruling, Matter of Castro-Tum, 27 I&N Dec. 271 (A.G. 2018), had limited the availability of administrative closure to certain defined circumstances not present in Arroyo's case.

Arroyo then filed a timely motion for reconsideration with the Board arguing for the first time that not only was the Iowa controlled-substance statute overbroad in general, but that a 2018 amendment to the federal definition of controlled substances had narrowed the federal definition of marijuana specifically to exclude certain substances containing low levels of THC—substances that were included in Iowa's 2011 definition of marijuana. According to Arroyo, the proper analysis required comparison of the Iowa statute at issue in his 2011 conviction to the federal controlled-substance definition as amended in 2018 with specific focus on the new federal definition of marijuana. The Government resisted Arroyo's motion for reconsideration arguing that Arroyo's 2011 Iowa statute of conviction and the state's list of controlled substances must be compared to the federal list of controlled substances in place at the time of the conviction rather than the federal list of controlled substances as modified in 2018.

The Board did not reach the substantive question raised in Arroyo's motion for reconsideration. Rather, the Board denied the motion as an impermissible attempt to assert a new legal argument that was available prior to the IJ or the Board's rulings

but not raised in those proceedings. Arroyo appeals in our case number 19-3032 challenging the BIA's finding of removability, denial of cancellation of removal, and denial of the motion to reopen. In our case number 20-1259, he challenges the BIA's denial of his motion for reconsideration.

## II.

We first address the Board's denial of Arroyo's petition for cancellation of removal.[3] Cancellation of removal is a form of discretionary relief available to removable petitioners who prove their eligibility. 8 U.S.C. § 1229b(b). We lack jurisdiction to review the exercise of discretion but possess jurisdiction to review the underlying legal determination of eligibility. 8 U.S.C. § 1252(a)(2)(B) & (D); Lopez-Chavez v. Garland, ___ F.3d ___, No. 18-3735, 2021 WL 1080551, at *2 (8th Cir. March 22, 2021).

To be eligible, a petitioner must prove, among other things, that he has not been convicted for "a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country *relating to a controlled substance* (as defined in section 802 of Title 21)." 8 U.S.C. § 1182 (a)(2)(A)(i)(II) (emphasis added); see also 8 U.S.C. 1229b(b)(1)(C). The federal criminal code definition for "controlled substance" often is not coextensive with a state's definition. As such, we apply the categorical approach to determine whether a petitioner's state

---

[3]Arroyo argues his Iowa controlled-substance conviction may serve neither as a basis for the Board's underlying finding of removability nor as a grounds disqualifying him from cancellation of removal. We need not address Arroyo's Iowa conviction in reference to the Board's finding of removability because the Board found Arroyo removable based on a second ground not challenged on appeal: entry without admission or parole. As such, we address the Iowa conviction in the context of the petition for cancellation of removal, an issue on which Arroyo bears the burden of proving eligibility. See Pereida v. Wilkinson, 141 S. Ct. 754, 758 (2021).

conviction necessarily qualifies as "relating to a controlled substance." See Moncrieffe v. Holder, 569 U.S. 184, 190 (2013) (applying the categorical approach to determine whether a prior conviction precluded discretionary relief); see also Gonzalez v. Wilkinson, ___ F.3d ___, No. 19-3412, 2021 WL 865336 (8th Cir. March 9, 2021) (applying the categorical approach to analyze the controlled-substance bar for cancellation of removal). Where substances prohibited by state law are not prohibited by federal law, we describe the state offense as overbroad. Rendon v. Barr, 952 F.3d 963, 968 (8th Cir. 2020); see also Moncrieffe, 569 U.S. at 190–91 ("Because we examine what the state conviction necessarily involved, not the facts underlying the case, we must presume that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized, and then determine whether even those acts are encompassed by the generic federal offense." (citation omitted)). In such a situation, we look to see whether the state statute is divisible, that is, whether it sets forth alternative elements defining separate offenses. See Rendon, 952 F.3d at 968 ("we ask whether it includes multiple, alternative elements that create several different crimes"). Where a state statute is overbroad but non-divisible, our analysis ends. A conviction under an overbroad and non-divisible statute is not *necessarily* a conviction "relating to a controlled substance" defined by 21 U.S.C. § 802.

Where a state statute is overbroad but divisible, however, we apply the modified categorical approach. See Rendon, 952 F.3d at 968–69. Under this approach, we "'determine, based on a limited class of judicial records, the crime of which the alien was convicted' and whether the 'offense of conviction fit[s] within the removable offense.'" Id. at 969 (quoting Martinez v. Sessions, 893 F.3d 1067, 1070 (8th Cir. 2018)). To determine if a statute is divisible, we look to the statute itself and state authority interpreting the statute. Id. Factors material to the divisibility analysis may include the existence of different punishments for different alternatives, the state's own treatment of the alternatives in charging practices and jury instructions, or the state's "allow[ance] for separate convictions under the [state] controlled substance statute for two different types of controlled substances." Id.

Where a statute lists alternative ways of committing the offense but we conclude those alternatives are not discrete, alternative elements, we will find the statute non-divisible.

Before the IJ and the Board, Arroyo argued Iowa Code Section 124.401(5) was overbroad but non-divisible because the Iowa definition of "controlled substance" included substances not prohibited under the federal definition and because the identity of the controlled substance was not an element of the Iowa offense. In fact, it is undisputed that Iowa's definition of "controlled substance" is broader than the federal definition. But, the IJ and Board disagreed with Arroyo as to divisibility, concluding that, as to marijuana, the identity of the controlled substance was an element of the Iowa offense. The IJ and Board reached this conclusion for several reasons previously recognized in our analysis of divisibility. Most clearly, the IJ and Board found the statute divisible because it provided different punishments for the simple possession of marijuana than for the simple possession of other controlled substances.

We agree, but we comment somewhat further to emphasize the narrow scope of our holding. Iowa Code Sections 124.401(1)–(4) criminalize the delivery, manufacture, or possession with intent to deliver controlled substances. As our Court has previously recognized, these more serious offenses are divisible because they set forth in considerable detail different punishments for an array of different controlled substances and quantities. See United States v. Ford, 888 F.3d 922, 930 (8th Cir. 2018) (finding Section 124.401(1) divisible under the Armed Career Criminal Act). In general, and in contrast, Iowa Code Section 124.401(5) criminalizes *simple possession* of controlled substances without a corresponding, detailed, or lengthy listing of different punishments for different substances and quantities. Instead, Section 124.401(5) generally categorizes simple possession offenses based on a defendant's criminal history as "simple misdemeanors," "aggravated misdemeanors,"

-7-

or "class 'D' felonies" as those terms are used in Iowa's general criminal code provisions for sentencing.

At first glance, then, the distinct structure of Iowa Code Section 124.401(5) when compared to Sections 124.401(1)–(4) would seem to suggest that Iowa's simple possession offense is non-divisible in reference to the controlled substances at issue in a conviction. But, as to the simple possession of marijuana specifically, Section 124.401(5) carves out a separate list of punishments than it does for all other Iowa controlled substances. See Iowa Code § 124.401(5) ("If the controlled substance is marijuana, the punishment shall be . . . ."). Like the IJ and the Board, we conclude that the existence of different punishments for the simple possession of marijuana in Iowa as contrasted with other controlled substances drives our analysis. The distinct punishments demonstrate that the identity of the controlled substance at issue as marijuana is an element of the offense and not merely an alternative means of committing the same offense. See Mathis v. United States, 136 S. Ct. 2243, 2256 (2016) ("If statutory alternatives carry different punishments, then under Apprendi they must be elements."). We, of course, limit our holding based on Iowa's unique treatment of marijuana and do not reach the issue of whether Section 124.401(5) is divisible as between other controlled substances.

Arroyo argues otherwise, pointing out the distinctions between our case and Ford. For the reasons just stated, however, when it comes to the simple possession of marijuana, the analyses in the present case and in Ford lead to the same result notwithstanding the structural differences in the statutory provisions. Arroyo also places considerable reliance on Iowa authority he describes as holding that a defendant's knowledge of the identity of a controlled substance is not an element of the offense. See, e.g., State v. Webb, 648 N.W.2d 72, 76 (Iowa 2002). The cited authority does not speak to the issue before us. The defendant's knowledge as to a controlled substance's identity is a question distinct from the identity of the controlled substance. Regardless of a defendant's knowledge, the Iowa Code

-8-

imposes different punishments for the simple possession of marijuana than for the simple possession of other controlled substances. The Board correctly found Iowa Code Section 124.401(5) divisible as between marijuana and other controlled substances.

Applying the modified categorical approach, the IJ and Board found Arroyo's prior conviction "related to a controlled substance offense" because his "Record of Plea of Guilty and Deferment of Judgment" from Iowa identified the charge to which he pleaded guilty as "Possession of Marijuana in violation of Iowa Code Section 124.401(5)." Arroyo does not seriously contend that this state court record fails to establish the substance at issue as marijuana. The Board did not err in finding Arroyo ineligible for cancellation of removal.

We next address the Board's denial of Arroyo's motion for reconsideration. The IJ ruled on Arroyo's petition on March 8, 2019. The Board issued its ruling affirming the IJ on August 23, 2019. Arroyo filed his timely motion for reconsideration on September 4, 2019. In that motion, he argued for the first time that (1) the relevant federal definition of controlled substances for comparison purposes was the definition as amended in December 2018, and (2) the question of divisibility needed to focus specifically on *different forms of marijuana*, not merely on the federal and Iowa definitions of controlled substances. The Board rejected the motion stating simply that the new arguments could have been raised, but were not raised, prior to the Board's ruling. Arroyo now argues the Board abused its discretion in so ruling because his arguments were not "new." According to Arroyo, he had consistently argued the overbreadth of the Iowa statute at all stages of his proceedings, even if he had not previously identified the 2018 federal amendments or focused divisibility arguments on different forms of marijuana.

We find no abuse of discretion in the Board's denial of the motion for reconsideration. See Mohamed v. Barr, 983 F.3d 1018, 1022 (8th Cir. 2020)

-9-

(standard of review).  In general, motions for reconsideration cannot be based on newly raised but previously available arguments.  See Ramirez v. Sessions, 902 F.3d 764, 775 (8th Cir. 2018) ("[T]he office of a motion to reconsider in an immigration case, under current law, is ordinarily limited to the consideration of factual or legal errors in the disposition of issues previously raised." (quoting Martinez-Lopez v. Holder, 704 F.3d 169, 172–73 (1st Cir. 2013))).  Rather, they must "specify the errors of law or fact in the previous order and . . . be supported by pertinent authority."  8 U.S.C. § 1229a(c)(6)(C).  Although exceptions to this general rule arguably may be recognized for *newly* amended laws, we find no authority for the proposition that arguments available prior to an IJ's ruling may be raised for the first time in a motion to reconsider.  In re O-S-G, 24 I&N Dec. 56, 58 (BIA Dec. 6, 2006) ("A motion to reconsider based on a legal argument that could have been raised earlier in the proceedings will be denied. . . . [T]he 'additional legal arguments' that may be raised in a motion to reconsider should flow from new law or a de novo legal determination reached by the Board in its decision that may not have been addressed by the parties.").  Although Arroyo consistently argued overbreadth, we conclude that his arguments concerning the 2018 federal amendment and comparison of his 2011 Iowa conviction to the later-amended federal statute clearly were new, complex arguments of a nature distinct from what he argued before the IJ and in his appeal to the Board.

In fact, several circuits have held that the proper analysis for cancellation of removal compares the state statutes of conviction to the federal definitions in effect at the time of the state conviction.  See, e.g., Medina-Rodriguez v. Barr, 979 F.3d 738, 748–49 (9th Cir. 2020); Gordon v. Att'y Gen., 962 F.3d 1344, 1351 n.4 (11th Cir. 2020); Martinez v. Att'y Gen., 906 F.3d 281, 287 (3d Cir. 2018); Doe v. Sessions, 886 F.3d 203, 208-09 (2d Cir. 2018) (the federal drug schedule "in effect at the time of conviction" governs).  These cases raise concerns not only of statutory interpretation but also nuanced policy implications including the underlying purpose of the categorical approach, the retroactive recognition of immigration consequences stemming from federal statutory changes that postdate state criminal convictions, and

-10-

the motives and inducements surrounding potential delays in the immigration enforcement setting. We do not address these complicated issues because they were not addressed by the Board. Rather, we identify them merely to explain why we believe the Board acted within its discretion in interpreting Arroyo's arguments in his motion for reconsideration as new and as clearly distinct from what he had raised in his appeal.[4]

We affirm the Board and deny the petitions for review.

_____

[4]We need not reach the merits of Arroyo's arguments concerning the Board's denial of his motion to reopen proceedings for administrative closure as related to his pursuit of DACA relief. Any efforts in that regard are now moot because the Government denied Arroyo's DACA renewal application and Arroyo does not suggest he has any matters currently pending concerning DACA relief.