# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-3651

_____

Mario Mejia-Lopez; Silvia Lorena Rodas-Ordonez; Erick Fernando Mejia-Rodas;
Meylin Lorena Mejia-Rodas; Luis Mario Mejia-Rodas

*Petitioner*s

v.

William P. Barr, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: September 24, 2019
Filed: December 11, 2019

_____

Before SMITH, Chief Judge, BEAM and ERICKSON, Circuit Judges.

_____

SMITH, Chief Judge.

Petitioners seek review of the Board of Immigration Appeals' (BIA) denial of
their request for humanitarian asylum. Mario Mejia-Lopez and Silvia Rodas-Ordonez
are the parents of Erick Mejia-Rodas, Meylin Mejia-Rodas, and Luis Mejia-Rodas,
and they seek asylum for themselves and their children. They contend that the BIA

erred in requiring that they show past persecution on account of a protected ground as a prerequisite for obtaining humanitarian asylum. Petitioners also request that we remand this case to the BIA for full development of the record on their humanitarian-asylum claim. We deny the petition for review.

## I. *Background*

Petitioners are natives and citizens of Guatemala. On or about October 31, 2016, petitioners reached the United States-Mexico border in El Paso, Texas. Petitioners did not present valid entry or travel documents upon applying for admission and, therefore, were paroled into the United States. The Department of Homeland Security (DHS) simultaneously served petitioners with a notice to appear (NTA), which charged petitioners with being removable pursuant to the Immigration and Nationality Act (INA) § 212(a)(7)(A)(i)(I). *See* 8 U.S.C. § 1182(a)(7)(A)(i)(I). Petitioners resided in Carthage, Missouri. In January 2017, DHS filed the NTA in the Immigration Court in Kansas City, Missouri, initiating formal removal proceedings against petitioners.

In June 2017, petitioners admitted to all factual allegations in the NTA, conceded removability, and declined to designate a country of removal. The immigration judge (IJ) designated Guatemala as the country of removal, and petitioners informed the IJ that they would apply for asylum and other relief.

Petitioners claimed that they qualified for asylum based on (1) their membership in two particular social groups (PSG) and (2) their political opinions. Meylin alleged that she had suffered past persecution as a member of "female children subjected to rape within a society where the subordination and devaluation of women by men ha[ve] allowed them to be sexually persecuted with government sanctioned impunity." Pet'rs' Br. at 5 (quoting Admin. R. at 4). The remaining petitioners stated that they are members of one family and averred past persecution based on their kinship to Meylin. Petitioners explained that a man had raped Meylin

when she was 13 years old. They alleged that the perpetrator's supporters had threatened to kill petitioners if they pursued criminal charges. The threats caused petitioners to seek refuge in the United States. They also contended that the ordeal has traumatized Meylin and affected her well-being.

In addition, petitioners asserted that they had been persecuted based on their political opinions. According to petitioners, they expressed their political opinions when Meylin had resisted the perpetrator's abuse by reporting Meylin's rape to law enforcement and pursuing criminal charges. Petitioners claimed that their alleged political opinions had induced the threat that they received from the perpetrator's supporters. Petitioners also relied on the government's alleged indifference toward Meylin's rape.

The IJ held a merits hearing in August 2017 and subsequently denied petitioners' multiple claims for relief. In relevant part, the IJ concluded that petitioners were not eligible for humanitarian asylum pursuant to 8 C.F.R. § 1208.13(b)(1)(iii) because petitioners had not established past persecution based on a protected ground that is enumerated in § 101(a)(42)(A) of the INA. *See also* 8 U.S.C. § 1101(a)(42)(A). In sum, the IJ found that petitioners had not shown that they were harmed due to either Meylin's membership in her alleged PSG or as a result of their alleged political opinions.

The IJ specifically found that petitioners had failed to show that Meylin's PSG is cognizable as a particular and socially distinct group. The IJ acknowledged gender as an immutable characteristic but explained that gender alone is insufficient to satisfy the particularity requirement of a PSG. Further, the IJ found that the group—young girls who have been sexually abused—is not socially distinct. The IJ also found that opposing private criminal activity as a victim is not a political opinion as that term is understood in immigration law. The IJ did not address the other alleged PSG.

Petitioners appealed to the BIA. Among other things, petitioners argued before the BIA that they qualified for humanitarian asylum because they would suffer "other serious harm" if removed to Guatemala and that the "other serious harm" does not require proof of "harm or past persecution on account of a protected group." Pet'rs' Br. at 10. Petitioners described the "other serious harm" as the likelihood of Meylin continuing to experience post-traumatic stress disorder, the possibility of Meylin exhibiting careless behavior, and the risk of Meylin committing suicide. The BIA denied relief and agreed with the IJ, concluding that petitioners were not eligible for humanitarian asylum because they had failed to demonstrate the requisite past persecution on account of a protected ground.

In determining whether past persecution in connection with a protected ground existed, the BIA only addressed Meylin's alleged PSG and petitioners' alleged political opinions. The BIA stated the following:

> [T]o be a cognizable particular social group for asylum . . . purposes, the claimed group must exist independently of the persecution or harm its members claim to suffer or fear. The group female children subjected to rape is impermissibly circular because it is defined by reference to the persecution (i.e., rape) its members have suffered.

Pet'rs' Add. at 4 (cleaned up). The BIA further found that Meylin's alleged PSG is defined as a childhood group, that childhood is not an immutable characteristic, and that petitioners had not demonstrated a nexus between any Guatemalan female child that had been targeted for persecution on account of her status as a rape victim. The BIA also found that petitioners' "mere opposition to private criminal acts does not so qualify" as a political opinion for asylum purposes. *Id.*

The BIA dismissed petitioners' entire appeal. This timely petition for review ensued, *see* 8 U.S.C. § 1252(b)(1), and we have jurisdiction to review the BIA's final

order of removal as it relates to petitioners' humanitarian-asylum claim. *See* 8 U.S.C. § 1252(a)(1).

## II. *Discussion*

"We review the BIA's decision, as it is the final agency decision; however, to the extent that the BIA adopted the findings or the reasoning of the IJ, we also review the IJ's decision as part of the final agency action." *Degbe v. Sessions*, 899 F.3d 651, 655 (8th Cir. 2018) (quoting *Davila-Mejia v. Mukasey*, 531 F.3d 624, 627 (8th Cir. 2008)). "We review the BIA's legal determinations de novo, according substantial deference to the BIA's interpretation of the statutes and regulations it administers." *Id.* (quoting *Davila-Mejia*, 531 F.3d at 627). As for the BIA's ultimate denial of an asylum application, such decision "is 'conclusive unless manifestly contrary to the law and an abuse of discretion.'" *Mambwe v. Holder*, 572 F.3d 540, 547 (8th Cir. 2009) (quoting 8 U.S.C. § 1252(b)(4)(D)).

Petitioners' principal argument on appeal is that a showing of past persecution based on a protected ground is not required as a prerequisite for a grant of humanitarian asylum. Petitioners also assert that this court has on other occasions addressed the "other serious harm" ground for humanitarian asylum. They contend we have defined this ground as "harm that is not inflicted on account of race, religion, nationality, membership in a particular social group, or political opinion, but is so serious that it equals the severity of persecution." Pet'rs' Br. at 10 (quoting *Hernandez v. Holder*, 579 F.3d 864, 875 (8th Cir. 2009), *vacated in part*, 606 F.3d 900 (8th Cir. 2010)). Petitioners further allege that the BIA improperly characterized their claim for humanitarian asylum as being based on past persecution only and that the BIA did not properly develop the record as a result of the mischaracterization.

Discretion to grant asylum to an individual who is considered to be a "refugee" within the meaning of the INA rests with DHS or the Attorney General. *Ixtlilco-Morales v. Keisler*, 507 F.3d 651, 654 (8th Cir. 2007) (quoting 8 U.S.C.

§ 1158(b)(1)). "A refugee is defined by the [INA] as an alien who is unwilling or unable to return to his or her country of nationality 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Id.* (citing 8 U.S.C. § 1101(a)(42)(A)). An asylum applicant bears the burden of proving that she or he is a refugee within the meaning of the INA. 8 U.S.C. § 1158(b)(1)(B)(i).

An asylum applicant is entitled to a rebuttable presumption of a well-founded fear of persecution after demonstrating that the applicant's past persecution or harm occurred because of a statutorily protected ground. *Bushira v. Gonzales*, 442 F.3d 626, 630–31 (8th Cir. 2006) (citing 8 C.F.R. § 208.13(b)(1)); *see also* 8 C.F.R. § 1208.13(b)(1).[1] DHS can rebut the well-founded fear presumption. *Bushira*, 442 F.3d at 631 (citing 8 C.F.R. § 208.13(b)(1)(ii)); *see also* 8 C.F.R. § 1208.13(b)(1)(ii). But even when it does, an applicant may be entitled to a discretionary grant of humanitarian asylum pursuant to the following:

> (iii) Grant in the absence of well-founded fear of persecution. An applicant described in paragraph (b)(1)(i) of this section . . . may be granted asylum, in the exercise of the decision-maker's discretion, if:
>
>> (A) The applicant has demonstrated compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution; or
>>
>> (B) The applicant has established that there is a reasonable possibility that he or she may suffer *other serious harm* upon removal to that country.

---

[1]"As a result of the enactment of the Homeland Security Act of 2002, 8 C.F.R. Part 208 was duplicated at 8 C.F.R. Part 1208, which applies to actions by the BIA." *Ixtlilco-Morales*, 507 F.3d at 655 n.2.

8 C.F.R. § 1208.13(b)(1)(iii)(A)–(B) (emphasis added). The applicant must be "an alien found to be a refugee on the basis of past persecution." 8 C.F.R. § 1208.13(b)(1)(i). Thus, a humanitarian-asylum applicant must first demonstrate refugee status that is based on a nexus between the past persecution and a protected ground—either race, religion, nationality, membership in a PSG, or political opinion. *Id.*; *see also* 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B)(i). Once it is established that the humanitarian-asylum applicant is a refugee within the meaning of the INA, then the applicant must either provide compelling reasons that reveal why the applicant cannot return to the country of removal as it relates to the past persecution or prove that there is a reasonable possibility that the applicant may suffer other serious harm in the country of removal. 8 C.F.R. § 1208.13(b)(1)(iii)(A)–(B). Simply put, a humanitarian-asylum applicant must establish that she or he is a refugee based on past persecution. *Kanagu v. Holder*, 781 F.3d 912, 919 (8th Cir. 2015).

Petitioners' principal argument—that past persecution is not required as a prerequisite for obtaining humanitarian asylum—is foreclosed by our existing precedent. In *Kanagu*, this court briefly discussed Kanagu's argument that a remand of his case was warranted because the BIA did not address his humanitarian-asylum claim. *Id.* We held that remand was not warranted because "humanitarian asylum may only be granted to an alien found to be a refugee on the basis of past persecution, meaning Kanagu's failure to prove persecution on a protected ground makes him ineligible for humanitarian asylum." *Id.* (cleaned up); *see also Esenwah v. Ashcroft*, 378 F.3d 763, 766 (8th Cir. 2004) ("[W]ithout the requisite nexus[,] [petitioner] does not fit the statutory term 'refugee' and thus is not eligible for a discretionary grant of asylum.").

Here, petitioners must prove that they are refugees based on past persecution as provided in 8 C.F.R. § 1208.13(b)(1)(i)–(iii). *See also* 8 U.S.C. § 1158(b)(1)(B)(i). As discussed, petitioners must make an initial showing of refugee status by connecting petitioners' past persecution to a protected ground. Petitioners have not

-7-

made that showing. Therefore, the BIA did not abuse its discretion in denying petitioners' request for humanitarian asylum.

## III. *Conclusion*

For the foregoing reasons, we deny the petition for review.

_____