# Matter of A-C-A-A-, Respondent

*Decided by Attorney General September 24, 2020*

U.S. Department of Justice
Office of the Attorney General

(1)  In conducting its review of an alien's asylum claim, the Board of Immigration Appeals ("Board") must examine de novo whether the facts found by the immigration judge satisfy all of the statutory elements of asylum as a matter of law.  *See Matter of R-A-F-*, 27 I&N Dec. 778 (A.G. 2020).

(2)  When reviewing a grant of asylum, the Board should not accept the parties' stipulations to, or failures to address, any of the particular elements of asylum—including, where necessary, the elements of a particular social group.  Instead, unless it affirms without opinion under 8 C.F.R. § 1003.1(e)(4)(i), the Board should meaningfully review each element of an asylum claim before affirming such a grant, or before independently ordering a grant of asylum.  *See Matter of L-E-A-*, 27 I&N Dec. 581, 589 (A.G. 2019).

(3)  Even if an applicant is a member of a cognizable particular social group and has suffered persecution, an asylum claim should be denied if the harm inflicted or threatened by the persecutor is not "on account of" the alien's membership in that group.  That requirement is especially important to scrutinize where the asserted particular social group encompasses many millions of persons in a particular society.

(4)  An alien's membership in a particular social group cannot be "incidental, tangential, or subordinate to the persecutor's motivation . . . [for] why the persecutor[] sought to inflict harm."  *Matter of A-B-*, 27 I&N Dec. 316, 338 (A.G. 2018) (citations omitted).  Accordingly, persecution that results from personal animus or retribution generally does not support eligibility for asylum.

## BEFORE THE ATTORNEY GENERAL

Pursuant to 8 C.F.R. § 1003.1(h)(1)(i) (2020), I direct the Board of Immigration Appeals ("Board") to refer this case to me for review of its decision.  With the case thus referred, I hereby vacate the Board's decision and remand this case for review by a three-member panel.

In *Matter of A-C-A-A-* (BIA Nov. 6, 2019) ("BIA Op."), the Board dismissed an appeal by the Department of Homeland Security ("DHS") challenging, as relevant here, the immigration judge's determination that the respondent had established a nexus between her membership in a particular social group ("Salvadoran females") and past persecution by her parents.  The Board devoted a mere sentence to the merits of the respondent's asylum claim, stating that it could "discern no clear error in the Immigration Judge's

determination that the respondent established persecution on account of her membership in a particular social group." *Id*. at 2.

In recent decisions, former Attorney General Sessions and I have emphasized that the Board must review de novo both questions of law and the immigration judge's application of the law to the facts. These decisions recognize that the respondent must present evidence to establish the existence of a particular social group and a nexus between the respondent's membership in that group and the asserted persecution. Based on the elements necessary to establish these components of a valid asylum claim, we have explained that victims of private violence, including domestic violence, will not usually satisfy the requirements for asylum on the basis of those particular circumstances. In this case, the Board neither analyzed in any depth whether the evidence presented by the respondent established the nexus requirement, nor reviewed the immigration judge's ultimate determination that the respondent was eligible for humanitarian asylum. On remand, the Board should consider whether the respondent carried her burden to prove her asylum claim consistent with applicable precedents and the instruction that such questions must be subject to meaningful review. In particular, the Board must consider whether the respondent has established that her past mistreatment was "on account of" a protected ground such as membership in a particular social group, rather than on account of individualized private circumstances not connected to any statutory basis for asylum relief.

# I.

The Immigration and Nationality Act ("INA") establishes that an alien applying for relief or protection from removal has the burden of proof to establish that she "(i) satisfies the applicable eligibility requirements; and (ii) with respect to any form of relief that is granted in the exercise of discretion, that the alien merits a favorable exercise of discretion." INA § 240(c)(4)(A), 8 U.S.C. § 1229a(c)(4)(A). Accordingly, if an alien fails to satisfy the eligibility requirements or fails to demonstrate that she merits a favorable exercise of discretion, her application must be denied.

One form of relief that the INA authorizes the Attorney General to grant is asylum, which may be granted to an alien who establishes that she is a refugee, meaning that she is unable or unwilling to return to her country of origin because of persecution or a well-founded fear of persecution on account of the five protected grounds of "race, religion, nationality, membership in a particular social group, or political opinion." INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A); INA § 208(b)(1)(A), (B)(i),

8 U.S.C. § 1158(b)(1)(A), (B)(i). Consistent with the general burden in removal proceedings, the INA further specifies that it is the alien's burden to demonstrate that she is a refugee within the statutory definition. INA § 208(b)(1)(B); *see also* 8 C.F.R. § 1208.13(a) (stating that the burden of proof is on the alien to establish that she is a refugee). "To establish that the applicant is a refugee . . . the applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." INA § 208(b)(1)(B)(i).

An alien may establish eligibility for asylum in two different ways. First, an alien may establish a "well-founded fear" of future persecution by showing that a reasonable person in her circumstance would fear persecution on one of the five protected grounds if she were to return to her home country. *Matter of Mogharrabi*, 19 I&N Dec. 439, 445 (BIA 1987). Alternatively, an alien may satisfy asylum requirements by establishing that she has suffered past persecution, creating a presumption that she will face a well-founded fear of persecution upon her return. *Matter of H-*, 21 I&N Dec. 337, 346–47 (BIA 1996); 8 C.F.R. § 1208.13(b)(1). But that presumption may be rebutted where there has been a "fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution" from that original source. 8 C.F.R. § 1208.13(b)(1)(i)(A); *see also, e.g.*, *Matter of N-M-A-*, 22 I&N Dec. 312, 318 (BIA 1998) ("[I]f the record reflects that country conditions relating to the past persecution have changed to such an extent that the applicant no longer has a well-founded fear of harm from his original source of persecution, the evidentiary presumption is extinguished[.]"). Even if the Attorney General determines that, as a result of a "fundamental change in circumstances," an alien who is otherwise eligible for asylum is not likely to face future persecution on account of a protected ground, he has discretion to grant asylum for humanitarian reasons on one of two grounds. By regulation, the Attorney General may grant humanitarian asylum where (1) the alien has "demonstrated compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution," or (2) the alien "has established that there is a reasonable possibility that he or she may suffer other serious harm upon removal to that country." 8 C.F.R. § 1208.13(b)(1)(iii)(A)–(B); *see also Matter of L-S-*, 25 I&N Dec. 705, 710–11 (BIA 2012) (clarifying that "an asylum applicant . . . bears the burden of proof to show that either form of humanitarian asylum is warranted"). Humanitarian asylum is nonetheless appropriate only "in rare instances," *Ben Hamida v. Gonzales*, 478 F.3d 734, 740 (6th Cir. 2007) (citation omitted), and is available only to those asylum applicants who have

demonstrated that they suffered past persecution on account of a protected ground, *see Mejia-Lopez v. Barr*, 944 F.3d 764, 768 (8th Cir. 2019).

The respondent here, a native and citizen of El Salvador, entered the United States illegally in 2012 and was placed in removal proceedings in 2013.  After conceding removability in 2018, the respondent sought asylum and other immigration protection on the basis that she had suffered past persecution at the hands of her parents on account of her membership in a particular social group of "Salvadoran females."  The respondent also asserted that she had a well-founded fear of future persecution on account of being a woman in El Salvador, by her former romantic partner, gang members, or the Salvadoran police.  The immigration judge concluded that the respondent had established that she had suffered past persecution at the hands of her parents, but because there had been a fundamental change in the respondent's circumstances—the respondent was now twenty-nine years old and likely would not reside with her parents upon her return—the immigration judge concluded that the respondent no longer had a well-founded fear of persecution by her parents.  Nevertheless, the immigration judge found the respondent eligible for a humanitarian grant of asylum, after determining that she had established that she would face "other serious harm" were she to return to El Salvador.

On appeal, DHS challenged the immigration judge's finding that the respondent was credible and that she had established a nexus between her membership in a particular social group and past persecution.  The Board affirmed, deferring to the immigration judge's credibility finding and concluding, in a one-sentence discussion of the merits of the respondent's asylum claim, that it could "discern no clear error in the Immigration Judge's determination that the respondent established persecution on account of her membership in a particular social group."  BIA Op. at 2.

## II.

By regulation, the Board "function[s] as an appellate body charged with the review of those administrative adjudications under the Act that the Attorney General may by regulation assign to it."  8 C.F.R. § 1003.1(d)(1).  I recently explained that, "[a]lthough the Board reviews an immigration judge's factual findings for clear error, it reviews *de novo* 'questions of law, discretion, and judgment and all other issues in appeals,' including the application of law to fact."  *Matter of R-A-F-*, 27 I&N Dec. 778, 779 (A.G. 2020) (citing 8 C.F.R. § 1003.1(d)(3)(i), (ii)); *see also Board of Immigration Appeals: Procedural Reforms to Improve Case Management*, 67 Fed. Reg. 54878, 54888–89 (Aug. 26, 2002) ("[T]he Board members will retain their

'independent judgment and discretion,' subject to the applicable governing standards, regarding the review of pure questions of law and the application of the standard of law to those facts."). The Board certainly "has no duty to write an exegesis on every contention" presented in each case, but it must "consider the issues" and "announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Scorteanu v. INS*, 339 F.3d 407, 412 (6th Cir. 2003).[1]

The elements of an asylum claim are well established. In *Matter of M-E-V-G-*, 26 I&N Dec. 227 (BIA 2014), the Board explained in detail what applicants who, like the respondent, claim to have suffered past persecution on account of their membership in a particular social group must establish to prove their eligibility for asylum. More recently, in *Matter of A-B-*, 27 I&N Dec. 316 (A.G. 2018), Attorney General Sessions "reiterate[d] that an applicant for asylum on account of her membership in a purported particular social group must demonstrate: (1) membership in a particular group, which is composed of members who share a common immutable characteristic, is defined with particularity, and is socially distinct within the society in question; (2) that her membership in that group is a central reason for her persecution; and (3) that the alleged harm is inflicted by the government of her home country or by persons the government is unwilling or unable to control." *Id*. at 320.

As *Matter of A-B-* also explained, the Board must meaningfully review each of these elements when presented with an appeal from a grant of asylum. *Id*.; *see also id*. at 340 ("The respondent must present facts that undergird each of these elements [of an asylum claim], and the asylum officer, immigration judge, or the Board has the duty to determine whether those facts satisfy all of the legal requirements for asylum."). *Matter of A-B-* criticized the Board for analyzing elements "in a conclusory fashion," for "citing the standard of review" but "not apply[ing] it," and for relying on "summary reasoning." *Id*. at 343. DHS's decision not to expressly challenge a particular element of an asylum claim did not relieve the Board from its need to review the immigration judge's determination as to that element. *See id*. at 339 (overruling a decision in which "the Board recognized that it had a duty to evaluate any claim regarding the existence of a particular social group in a country in the context of the evidence presented regarding the particular circumstances in the country in question, but it did not adequately observe

---

[1] The Board need not provide such an explanation when it affirms without opinion under 8 C.F.R. § 1003.1(e)(4)(i). In such a case, the reviewing court will look to the immigration judge's decision in connection with its review. *See Dia v. Ashcroft*, 353 F.3d 228, 240 (3d Cir. 2003).

that duty" and instead "accepted, with little or no analysis, DHS's concessions to the contrary on nearly every legal issue" (citations and alterations omitted)); *Matter of L-E-A-*, 27 I&N Dec. 581, 589 (A.G. 2019) (explaining that "a cursory analysis of a question that was either uncontested, or not dispositive to the outcome" does not "undermine the Board requirement" to ensure that asylum applicants establish all the elements of their claim through "the thorough, case-specific analysis . . . that the Board's precedents generally require").[2]

In conducting this review, the Board also must examine whether the facts found by the immigration judge satisfy those elements as a matter of law.[3] This requirement is consistent with the INA's placing the burden upon the alien regarding applications for relief—the alien either carries her burden or she does not.

---

[2]   If the Board finds that "an alien's asylum application is fatally flawed in one respect, . . . the Board need not examine the remaining elements of the asylum claim." *Matter of A-B-*, 27 I&N Dec. at 340; *see also, e.g.*, *De Pena-Paniagua v. Barr*, 957 F.3d 88, 92 (1st Cir. 2020). But in such a case, the Board should not affirmatively endorse a particular social group, or other elements of an asylum claim, if it later finds that the respondent is ineligible for asylum because she failed to satisfy a different statutory element. *See Matter of L-E-A-*, 27 I&N Dec. at 42–43.

[3]   Meaningful review may, in some cases, take the form of "a statement that the Board's conclusions upon review of the record coincide with those which the immigration judge articulated in his or her decision," so long as, in making such a statement, the Board has "rel[ied] upon [its] own independent judgment in deciding the ultimate disposition of the case." *Matter of Burbano*, 20 I&N Dec. 872, 873–74 (BIA 1994). In such a case, "the Board's final decision may be rendered in a summary fashion; however, such summary treatment of a case does not mean that [the Board] ha[s] conducted an abbreviated review of the record or ha[s] failed to exercise [its] own discretion." *Id.* at 874. As courts of appeals have recognized, "where the BIA cites its decision in *Burbano* and does not express disagreement with any part of the IJ's decision, the BIA adopts the IJ's decision in its entirety," and where "the BIA intends to constrict the scope of its opinion to apply to only one ground upon which the IJ's decision rested, the BIA can and should specifically state that it is so limiting its opinion." *Abebe v. Gonzales*, 432 F.3d 1037, 1040 (9th Cir. 2005); *see also, e.g.*, *Bondarenko v. Holder*, 733 F.3d 899, 906 (9th Cir. 2013); *Gishta v. Gonzales*, 404 F.3d 972, 980 (6th Cir. 2005); *Paripovic v. Gonzales*, 418 F.3d 240, 244 (3d Cir. 2005). Where the Board has cited *Matter of Burbano*, the summary affirmance differs from an affirmance without opinion under 8 C.F.R. § 1003.1(e)(4)(i). In the latter situation, the Board adopts only the results of the immigration judge's decision, deeming any error harmless or nonmaterial, whereas a *Burbano* affirmance reflects the Board's adoption of the results *and the reasoning* of the immigration judge. *Abebe*, 432 F.3d at 1041.

### III.

### A.

*Matter of A-B-* not only reiterated the standard by which the Board should review asylum claims but also involved a legal claim similar to the claim at issue in this case. In *Matter of A-B-*, a victim of domestic violence alleged that she had been abused by her ex-husband in El Salvador and "was eligible for asylum because she was persecuted on account of her membership in the purported particular social group of 'El Salvadoran women who are unable to leave their domestic relationships where they have children in common' with their partners." 27 I&N Dec. at 321. *Matter of A-B-* vacated the Board's order to grant the respondent asylum pending the completion of background checks, primarily because the Board's "cursory analysis of the respondent's social group" failed to demonstrate that A-B- had established a cognizable particular social group as a matter of law. *Id.* at 340. The Board had "cited no evidence that [A-B-'s] husband knew any such social group existed, or that he persecuted [his] wife for reasons unrelated to their relationship," *id.* at 343, suggesting that the alien had not demonstrated that any such persecution was on account of A-B-'s membership in a particular social group. And it likewise concluded that the Board "erred in finding . . . that El Salvador was unable or unwilling to protect A-B-" by relying only on evidence of "the persistence of domestic violence in El Salvador." *Id.* at 344.

In addition, *Matter of A-B-* overruled *Matter of A-R-C-G-*, which had held that "'married women in Guatemala who are unable to leave their relationship'" constituted a particular social group within the meaning of the INA. *Matter of A-B-*, 27 I&N Dec. at 331 (quoting *Matter of A-R-C-G-*, 26 I&N Dec. 388, 392 (BIA 2014)). The Attorney General concluded that the Board in *Matter of A-R-C-G-* had failed to establish that this group was "defined with particularity," *Matter of A-B-*, 27 I&N Dec. at 335, or that the group "'exist[ed] independently' of the harm asserted in an application for asylum," *id.* at 334 (quoting *Matter of M-E-V-G-*, 26 I&N Dec. at 236 n.11, 243). Because "[t]he Board's scant analysis did not engage with these requirements or show that A-R-C-G-'s proposed group was 'defined by characteristics that provide a clear benchmark for determining who falls within the group,'" *Matter of A-B-* overruled *Matter of A-R-C-G-*. *Id.* at 335 (quoting *Matter of M-E-V-G-*, 26 I&N Dec. at 239). While *Matter of A-B-* did "not decide that violence inflicted by non-governmental actors may never serve as the basis for . . . asylum," it did state that "in practice such claims are unlikely to satisfy the statutory grounds for proving group persecution that the government is unable or unwilling to address." *Id.* at

90

320; *cf. id.* at 317 ("[T]here may be exceptional circumstances when victims of private criminal activity could meet these requirements[.]").

In this case, the Board committed many of the same errors that were at issue in *Matter of A-R-C-G-*. Here, the immigration judge concluded that the respondent had suffered past persecution through physical and psychological abuse by her parents on account of her being a "Salvadoran female[]." *Matter of A-C-A-A-*, at 7–8 (Immig. Ct. S.F. May 20, 2019) ("IJ Op."). And the Board erred by affirming the grant of asylum without meaningfully considering any of the elements of the respondent's asylum claim. Indeed, the Board indicated only that it saw no "clear error" in the immigration judge's conclusions about whether the respondent had suffered persecution on account of her membership in a particular social group, misapplying the appropriate standard of review, which required that the Board review *de novo* that conclusion and its underlying legal determinations. *See* 8 C.F.R. § 1003.1(d)(3)(ii); *Matter of R-A-F-*, 27 I&N Dec. at 779. On remand, the Board must consider whether the respondent established the existence of the particular social group of "Salvadoran females," and a nexus between the respondent's membership in that group and the asserted persecution.[4]

**B.**

In this case, the nature of the respondent's asserted particular social group makes the Board's failure to meaningfully review the immigration judge's nexus analysis especially problematic. The Board should have carefully considered whether the respondent's membership in the particular social group of "Salvadoran females" was truly "'one central reason'" for her persecution at the hands of her parents. *Matter of A-B-*, 27 I&N Dec. at 338

---

[4]   Although I do not decide the matter in this case, I note that there has been disagreement among the courts of appeals about whether gender-based groups may constitute a particular social group within the meaning of the INA. *Compare, e.g.*, *Amezcua-Preciado v. U.S. Att'y Gen.*, 943 F.3d 1337, 1344–45 (11th Cir. 2019) ("[W]hile the members of Amezcua-Preciado's proposed social group arguably share the immutable characteristic of being women, that characteristic alone is insufficient to make them cognizable as a particular social group under the INA."), *with, e.g.*, *De Pena-Paniagua*, 957 F.3d at 93–94, 96 ("[I]t is not clear why a larger group defined as 'women,' or 'women in country X'— without reference to additional limiting terms—fails either the 'particularity' or 'social distinction' requirement."). Furthermore, the Board should remember on remand that "conclusory assertions of countrywide negative cultural stereotypes . . . neither contribute to an analysis of the particularity requirement nor constitute appropriate evidence to support such asylum determinations." *Matter of A-B-*, 27 I&N Dec. at 336 n.9. The respondent has the burden to prove the existence of a particular social group and all other relevant factors of an asylum claim.

(quoting 8 U.S.C. § 1158(b)(1)(B)(i)).  Even if an applicant is a member of a cognizable particular social group and has suffered persecution, an asylum claim should be denied if the harm inflicted or threatened by the persecutor is not "on account of" the alien's membership in that group.  That requirement is especially important to scrutinize where, as here, the asserted particular social group encompasses millions of Salvadorans.  "'Although the category of protected persons [within a particular group] may be large, the number of those who can demonstrate the required nexus is likely not.'"  *Id*. (quoting *Cece v. Holder*, 733 F.3d 662, 673 (7th Cir. 2013) (en banc)).  As Attorney General Sessions has explained, the nexus requirement is "'where the rubber meets the road'" for many asylum claims.  *Id*. (quoting *Cece*, 733 F.3d at 673).  And as the Board has observed, in performing an appropriately thorough analysis of the nexus requirement in an asylum case, "[t]he question of a persecutor's motive will involve a particularized evaluation of the specific facts and evidence in an individual claim. . . . While some scenarios will present a clear answer, others will require a more nuanced evaluation."  *Matter of L-E-A-*, 27 I&N Dec. 40, 44 (BIA 2017).

An alien's membership in a particular social group cannot be "incidental, tangential, or subordinate to the persecutor's motivation . . . [for] why the persecutor[] sought to inflict harm."  *Matter of A-B-*, 27 I&N Dec. at 338 (citing *Matter of J-B-N- & S-M-*, 24 I&N Dec. 208, 214 (BIA 2007), and *INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992)).  Accordingly, persecution that results from personal animus or retribution generally does not establish the necessary nexus.  *See Zoarab v. Mukasey*, 524 F.3d 777, 781 (6th Cir. 2008) ("Asylum is not available to an alien who fears retribution solely over personal matters.").  The reasoning for this is straightforward: "When private actors inflict violence based on a personal relationship with a victim, then the victim's membership in a larger group may well not be 'one central reason' for the abuse."  *Matter of A-B-*, 27 I&N Dec. at 338–39; *see, e.g.*, *Gonzales-Veliz v. Barr*, 938 F.3d 219, 225 (5th Cir. 2019) (holding that substantial evidence supported the BIA's conclusion that the nexus requirement was not satisfied where "the BIA found that [asylum applicant's] ex-boyfriend was 'motivated only by retribution after she sued him,'" not by her membership in the particular social group of "Honduran women unable to leave their relationship").  "If the persecutor would have treated the applicant the same if the protected characteristic . . . did not exist, then the applicant has not established a claim on this ground."  *Matter of L-E-A-*, 27 I&N Dec. at 43–44.

Furthermore, if the persecutor has neither targeted nor manifested any animus toward any member of the particular social group other than the applicant, then the applicant may not satisfy the nexus requirement.  In

*Matter of R-A-*, for instance, "the record d[id] not reflect that [the applicant's] husband bore any particular animosity toward women who were intimate with abusive partners, women who had previously suffered abuse, or women who happened to have been born in, or were actually living in, Guatemala. . . .  On the basis of this record, [the Board] perceive[d] that the husband's focus was on the respondent because she was *his wife*, not because she was a member of some broader collection of women, however defined, whom he believed warranted the infliction of harm."  22 I&N Dec. 906, 921 (BIA 1999) (emphasis added); *Matter of A-B-*, 27 I&N Dec. at 339; *see also*, *e.g.*, *Margarita O-O v. Att'y Gen. U.S.*, 742 F. App'x 676, 681 & n.7 (3d Cir. 2018) ("[W]hile [respondent] presented some evidence that there is targeted violence against women in El Salvador for reasons including . . . ensuring gang control, this does not establish a nexus between the harm [the respondent] suffered and her status as a 'Salvadoran single female head of household responsible for the household's support.' . . .  [the respondent]'s belief is undermined by the fact that the gang members targeted both men and women."); *Jacobo-Melendres v. Sessions*, 706 F. App'x 724, 725–26 (2d Cir. 2017) (holding that, even assuming "unmarried women who refuse the advances of gang members" in Guatemala could constitute a particular social group, respondent had not satisfied the nexus requirement where she "testified that she was harassed, stalked, and attacked because a gang member was interested in having a relationship *with her*, but she did not assert that he or anyone else targeted her based on her membership in a group of similarly situated individuals who had refused the advances of gang members" (emphasis added)).

As I explained last year in *Matter of L-E-A-*, the Board has a duty to conclude that the respondent has satisfied all of the statutory requirements to qualify for asylum before affirming an immigration judge's grant of asylum. 27 I&N Dec. at 596.  Here, even though DHS specifically challenged the immigration judge's determination that her membership in the particular social group of "Salvadoran females" was at least one central reason for her persecution at the hands of her parents, the Board's decision gave no indication that it gave this question more than fleeting consideration.

A closer examination of the immigration judge's conclusion, in light of the record, would have raised questions concerning the nexus requirement. For instance, the immigration judge did not cite any evidence that the respondent's parents themselves had ever said or done anything to express hostility to "Salvadoran females" in general, as opposed to having made statements and taken actions based upon their personal feelings about the respondent, their daughter.  *See Matter of A-B-*, 27 I&N Dec. at 338 (describing the need for evidence that the persecutor is aware of and hostile

to the particular social group). The Board did not explore whether there was any evidence that the respondent's parents bore animosity toward other "Salvadoran females" or that her parents—including her mother, who would have been a member of the group as well—perceived all "Salvadoran females" as a distinct social group. *Compare id*. at 339 *with* IJ Op. at 10 (quoting respondent's declaration, which averred that her father told her "I am the man of this house and I am in charge. You're *my daughter* and you have to do what I say!" (emphasis added)). Indeed, it seems unlikely that the respondent will be able to demonstrate that she suffered persecution based on membership in a social group as broad as all "Salvadoran females," because of the need to establish that the private violence reflected a general animus against a broad social group rather than the personal animus arising from the relationship between the purported persecutors and the asylum applicant.

As in *Matter of A-B-*, I need not, and do not, hold here that there are no circumstances where an applicant's membership in a gender-based particular social group may be "one central reason" for an applicant's persecution. *See Grace v. Barr*, 965 F.3d 883, 906 (D.C. Cir. 2020) ("The only general rule that *Matter of A-B-* articulates . . . is that asylum officers have to go through the steps for analyzing particular-social-group claims," which is "perfectly consistent with" the instruction that "claims be analyzed on a case-by-case basis." (internal quotation marks and alterations omitted)).[5] But the record here raises serious questions about whether the applicant may carry that burden, and the Board did not satisfy its duty to analyze whether the respondent could establish that the nexus requirement had been satisfied or to review the immigration judge's legal conclusions *de novo*.

## IV.

---

[5]  In *Grace v. Barr*, the D.C. Circuit reversed a district court decision calling into question some aspects of *Matter of A-B-* and a guidance document subsequently issued by U.S. Citizenship and Immigration Services (USCIS). *See* USCIS, *Guidance for Processing Reasonable Fear, Credible Fear, Asylum, and Refugee Claims in Accordance with* Matter of A-B-, PM-602-0162 (July 11, 2018). The court of appeals held that "parts of both *A-B-* and the Guidance make clear that asylum officers must 'analyze each case on its own merits in the context of the society where the claim arises.' In other words, the record in this case does not support the asylum seekers' argument that USCIS and the Attorney General have erected a rule against asylum claims involving allegations of domestic and/or gang violence." *Grace*, 965 F.3d at 906 (citation omitted); *see also Gonzales-Veliz*, 938 F.3d at 233 ("[T]he Attorney General's *A-B-* decision did not create a blanket preclusion for groups based on domestic violence," but rather explained that "the applicants 'must satisfy established standards when seeking asylum'" (quoting *Matter of A-B-*, 27 I&N Dec. at 317)).

This case involves an additional issue beyond whether the respondent suffered persecution on account of membership in a particular social group. Here, the immigration judge determined that, even though the respondent had suffered such persecution, she had not demonstrated a well-founded fear of future persecution on that basis, given that she was now twenty-nine years old and unlikely to live in her parents' home were she to return to El Salvador. The regulations, however, provide that even an alien who is unable to demonstrate that she fears future persecution of the sort she had suffered in the past may be granted asylum on a "humanitarian" basis. *See* 8 C.F.R. § 1208.13(b)(1)(iii). The immigration judge determined that the respondent was entitled to asylum on that basis because she had demonstrated that she would be at risk of "other serious harm" if she were to return to El Salvador. IJ Op. at 12–13.

I do not consider here whether the respondent has established that she is entitled to a discretionary grant of humanitarian asylum under 8 C.F.R. § 1208.13(b)(1)(iii)(B). *See Asylum Procedures*, 65 Fed. Reg. 76,121, 76,127 (Dec. 6, 2000) (defining "other serious harm" as harm that is "is so serious that it equals the severity of persecution," but that is not inflicted on account of the protected grounds of race, religion, nationality, membership in a particular social group, or political opinion). The Board here neglected to mention this issue or analyze whether the immigration judge's conclusions were consistent with the regulation and Board precedent about this form of humanitarian asylum. *See Matter of L-S-*, 25 I&N Dec. at 714 (discussing the appropriate "other serious harm" inquiry). The question of humanitarian asylum arises only when an alien has established past persecution on account of a statutorily protected ground but is unable to demonstrate a well-founded fear of future persecution. Here, the Board's antecedent analysis of the respondent's alleged past persecution was critically flawed. Thus, on remand, not only must the Board meaningfully analyze the respondent's alleged past persecution on account of her membership in a particular social group, but, if necessary, the Board must also consider whether the respondent merits humanitarian asylum—including by reviewing the determination of "other serious harm."

\* \* \* \* \*

For the reasons discussed above, I vacate the Board's decision and remand this case for review by a three-member panel in accordance with this opinion. On remand, the Board should meaningfully assess whether the respondent qualifies for asylum, and not affirm the immigration judge's

decision unless the Board concludes that the respondent has met her burden and has satisfied each of the three *Matter of M-E-V-G-* elements: her membership in a particular social group, a nexus between such a group and her persecution, and the unwillingness or inability of the government of El Salvador to protect her. The Board should also determine whether DHS has sufficiently rebutted the presumption that, should the respondent successfully establish that she has suffered past persecution on account of her membership in a particular social group, she faces a well-founded fear of persecution on the same basis. If DHS has not rebutted that presumption, the Board should determine whether DHS has established the feasibility of internal relocation. Finally, should the Board find, as the immigration judge did, that DHS has rebutted that presumption, it should review the immigration judge's subsequent conclusion that the respondent is eligible for a humanitarian grant of asylum.