# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2427
_____

Rusby Dionisia Aguilar-Hernandez; J.A.A.,

*Petitioners*,

v.

Pamela Bondi, Attorney General of the United States,

*Respondent*.
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: September 17, 2025
Filed: January 6, 2026
_____

Before COLLOTON, Chief Judge, SMITH and SHEPHERD, Circuit Judges.
_____

COLLOTON, Chief Judge.

Rusby Dionisia Aguilar-Hernandez and her minor child, Jose Adiel Arreaga Aguilar, petition for review of an order of the Board of Immigration Appeals. The Board denied their applications for asylum, withholding of removal, and relief under the Convention Against Torture. With respect to Aguilar-Hernandez's petition, we conclude that there was no legal error and that substantial evidence supports the

Board's decision, so we deny her petition. Because the minor child seeks asylum as a derivative beneficiary of Aguilar-Hernandez, we deny his petition as well.

I.

Aguilar-Hernandez and her son are citizens of Guatemala. In 2011, when she was fifteen years old, Aguilar-Hernandez met Cesar Humberto Arreaga Soto, then aged nineteen. Aguilar-Hernandez and Arreaga Soto began a romantic relationship and moved in together. Their child, Jose, was born in June 2012. After Jose was born, the relationship between the parents quickly deteriorated.

Aguilar-Hernandez asserts that Arreaga Soto raped her weekly. Arreaga Soto allegedly hit Aguilar-Hernandez every day, thereby causing scars and bruises on Aguilar-Hernandez's body. Arreaga Soto threatened to kill Aguilar-Hernandez if she ever disclosed what he was doing. Arreaga Soto repeatedly referred to Aguilar-Hernandez as a "bitch," "whore," and "prostitute." But Aguilar-Hernandez never filed a police report about the allegations.

On three separate occasions, Aguilar-Hernandez moved to her sister's home in the hope of ending her relationship with Arreaga Soto. Each time, Arreaga Soto apologized to Aguilar-Hernandez, and the couple reconciled. But Arreaga Soto's abusive behavior continued.

On January 1, 2016, Aguilar-Hernandez and Jose left Guatemala. On January 17, they were arrested at the border of the United States and detained pending deportation. On January 25, the Department of Homeland Security commenced removal proceedings.

Aguilar-Hernandez applied for asylum, humanitarian asylum, withholding of removal, and relief under the Convention Against Torture. Jose sought relief as as

-2-

a derivative beneficiary of Aguilar-Hernandez. After a hearing, the immigration judge denied Aguilar-Hernandez's application and the derivative application from Jose. On administrative appeal, the Board affirmed the immigration judge's decision.

Aguilar-Hernandez and Jose petition for review of the Board's decision. We review questions of law *de novo* and findings of fact for substantial evidence. *Ngugi v. Lynch*, 826 F.3d 1132, 1136 (8th Cir. 2016). Under the substantial evidence standard, findings are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary. 8 U.S.C. § 1252(b)(4)(B); *see Nasrallah v. Barr*, 590 U.S. 573, 576 (2020).

## II.

Aguilar-Hernandez first argues that the Board erred by denying her application for asylum. An applicant is eligible for asylum if she is unable or unwilling to return to her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *see* 8 C.F.R. § 1208.13(a).

Aguilar-Hernandez claims that she suffered persecution on account of her membership in three particular social groups: (1) Guatemalan women; (2) Guatemalan women viewed as property within a domestic relationship; and (3) Guatemalan women who are unable to leave a relationship. To show that persecution is "on account of" membership in a particular social group, the applicant must establish that membership "was or will be at least *one central reason* for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i) (emphasis added). "Under the one central reason nexus standard, a protected ground need not be the sole reason for persecution, but the protected ground cannot be incidental or tangential to the persecutor's motivation." *Garcia-Moctezuma v. Sessions*, 879 F.3d 863, 868 (8th Cir. 2018) (internal quotation omitted).

-3-

The Board assumed without deciding that the proposed social groups were cognizable, and denied relief on the ground that Aguilar-Hernandez failed to demonstrate the required nexus between the claimed persecution and her membership in the asserted social groups. The Board affirmed the immigration judge's finding that Arreaga Soto's abuse of Aguilar-Hernandez "stemmed from their uniquely personal relationship," and concluded that the asserted persecution was "the result of a private and personal dispute." Aguilar-Hernandez disputes this finding and contends that Arreaga Soto's conduct "reflects broader attitudes towards Guatemalan women." Aguilar-Hernandez maintains that Arreaga Soto physically and verbally abused her only because she is a woman.

The record does not compel the conclusion that Aguilar-Hernandez was persecuted on account of her membership in one of the proposed social groups. The immigration judge found that "there are many reasons why [Arreaga Soto] was abusive," and that Aguilar-Hernandez failed to show that her membership in a particular social group was a "central reason" for the abuse. Aguilar-Hernandez testified that Arreaga Soto did not like to work, "just wanted to drink," and "would use the money he earned when he did work to buy alcohol." The immigration judge found that Arreaga Soto's use of alcohol led to his abuse of Aguilar-Hernandez. Other evidence supported an inference that Arreaga Soto's abuse was motivated by his belief that Aguilar-Hernandez was unfaithful in their relationship and by his desire to extract money from her. Aguilar-Hernandez did not decide to leave Arreaga Soto once and for all until she discovered that he was having affairs with other women. The Board cited the immigration judge's findings on these points, and the record supports the Board's conclusion that Aguilar-Hernandez's membership in one of the proposed social groups was "incidental" or "tangential" to Arreaga Soto's motivation for the alleged persecution.

We therefore conclude that the Board properly denied the applications for asylum. Aguilar-Hernandez's claim for humanitarian asylum likewise fails because

she did not show past persecution based on membership in a particular social group. *See Mejia-Lopez v. Barr*, 944 F.3d 764, 767-69 (8th Cir. 2019). Because withholding of removal requires an applicant to meet a higher standard of proof, those claims fail as well. *See Rivas v. Sessions*, 899 F.3d 537, 542 (8th Cir. 2018).

Aguilar-Hernandez argues that the Board erred in denying her relief under the Convention Against Torture. To qualify for relief, an alien must prove "that it is more likely than not that he or she would be tortured if removed." 8 C.F.R. § 1208.16(c)(2). The alien must show that pain or suffering would be inflicted "by, or at the instigation of, or with the consent or acquiescence of" a public official or other person acting in an official capacity. 8 C.F.R. § 1208.18(a)(1). A government acquiesces when it is willfully blind to torture by private parties. *Hassan v. Rosen*, 985 F.3d 587, 590 (8th Cir. 2021).

Aguilar-Hernandez argued before the agency that the "Guatemalan government has demonstrated a total lack of political will to ensure compliance with the law," and has failed to address domestic and sexual violence. The immigration judge found that evidence of country conditions in Guatemala did not support a determination that the government acquiesced in torture. The Board cited the judge's finding, and concluded that Aguilar-Hernandez "has not presented particularized evidence that it is more likely than not she would be tortured upon returning to Guatemala by or with the acquiescence or willful blindness of a public official."

The Board's conclusion is supported by substantial evidence. Aguilar-Hernandez cites evidence of corruption, but the record does not compel the conclusion that the Guatemalan government has acquiesced in torture against women. *See Garcia-Milian v. Holder*, 755 F.3d 1026, 1035 (9th Cir. 2014). The judiciary operates a twenty-four-hour court in Guatemala City that offers services to women who have experienced domestic violence or sexual assault. In 2008, the legislature enacted a femicide law to combat violence against women, and provided for penalties

-5-

of twenty-five to fifty years in prison. The law also criminalized for the first time various acts of violence against women, including forms of physical, psychological, and economic violence. Specialized courts hear cases involving crimes charged under the law. While there was evidence of serious problems with violence against women, the record established that the Guatemalan government has taken steps to combat such violence and did not acquiesce in torture. The Board properly denied Aguilar-Hernandez's claim for relief under the Convention Against Torture.

For these reasons, the petitions for review are denied.

_____